UNITED STATES, Appellee

v.

Donavon F. FREDERICKSON, Airman Basic
U.S. Air Force, Appellant

No. 04-0720

Crim. App. No. 35442

United States Court of Appeals for the Armed Forces

Argued March 1, 2006

Decided April 7, 2006

EFFRON, J., delivered the opinion of the Court, in which GIERKE, C.J., and CRAWFORD, BAKER, and ERDMANN, JJ., joined.


Counsel

For Appellant: Major Sandra K. Whittington (argued); Lieutenant Colonel Mark R. Strickland, Lieutenant Colonel Carlos L. McDade, and Major Terry L. McElyea (on brief).

For Appellee: Major Steven R. Kaufman (argued); Lieutenant Colonel Robert V. Combs, Lieutenant Colonel Gary F. Spencer, and Major Heather L. Mazzeno (on brief); Major Michelle M. Lindo McCluer.


Military Judge: Dawn R. Eflein


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Frederickson, No. 04-0720/AF

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of a military judge sitting alone, Appellant was convicted, pursuant to his pleas, of conspiracy to open and steal mail matter, unlawful entry with intent to steal mail matter, unlawful opening of mail matter, and unlawful opening and stealing mail matter (four specifications), in violation of Articles 81, 130, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 930, 934 (2000). The adjudged and approved sentence included a dishonorable discharge, confinement for twenty-two months, forfeiture of all pay and allowances, and a $15,000 fine. The United States Air Force Court of Criminal Appeals affirmed in an unpublished opinion. United States v. Frederickson, No. ACM 35442, 2004 CCA LEXIS 181, 2004 WL 1539555 (A.F. Ct. Crim. App. June 30, 2004).[1]

On Appellant's petition, we granted review of the following issue:

---

[1] The unpublished opinion of the Court of Criminal Appeals contains the following footnote concerning Appellant's name:

> The [A]ppellant's name is spelled in various ways throughout the record of trial: Donovan K. Frederickson, Donavon F. Frederickson, Donovan F. Frederickson, and Donavon K. Frederickson. On the record, the [A]ppellant told the military judge his legal name is Donavon K. Fredrickson, but acknowledged that his military records all reflect Donavon F. Frederickson.

To be consistent with the captioning of this case by the court below, we shall use the name "Donovan F. Frederickson.

United States v. Frederickson, No. 04-0720/AF

> WHETHER THE AIR FORCE COURT OF CRIMINAL
> APPEALS ERRED IN FINDING THAT NONE OF THE
> STAFF JUDGE ADVOCATE'S COMMENTS IN HIS
> ADDENDUM TO THE STAFF JUDGE ADVOCATE'S
> REVIEW CONSTITUTED NEW MATTER.[2]

For the reasons set forth below, we affirm.


## I.  BACKGROUND

### A.  POST-TRIAL RECOMMENDATIONS
### AND THE OPPORTUNITY TO RESPOND

The findings and sentence of a court-martial are subject to review by the convening authority.  Article 60, UCMJ, 10 U.S.C. § 860 (2000).  If the case was tried before a general court-martial or before a special court-martial in which a bad-conduct discharge could be adjudged, the convening authority must obtain the recommendation of his or her staff judge advocate (SJA) before taking action on the results of the trial.  Rule for Courts-Martial (R.C.M.) 1106(a); see Article 60(d), UCMJ.  Prior to submitting the recommendation to the convening authority, the SJA must serve it on the accused and defense counsel for the opportunity to comment.  R.C.M. 1106(f)(1); R.C.M. 1106(f)(4); see Article 60(d), UCMJ; see also Article 60(b), UCMJ; R.C.M.

---

[2] United States v. Frederickson, 62 M.J. 367 (C.A.A.F. 2005).  In an earlier order, we granted review of an issue concerning the propriety of the adjudged fine.  United States v. Frederickson, 61 M.J. 10 (C.A.A.F. 2005).  Under our subsequent decision in United States v. Stebbins, 61 M.J. 366, 370-75 (C.A.A.F. 2005), the fine was not improper.

3

1105 (allowing the accused the opportunity to submit matters to the convening authority).

After the defense has had an opportunity to comment, the SJA may supplement the recommendation in an addendum. R.C.M. 1106(f)(7). If the addendum contains "new matter," the addendum must be served on the accused and defense counsel, who then have an opportunity to comment on the addendum. Id.; R.C.M. 1105(c)(1). See United States v. Catalani, 46 M.J. 325, 326 (C.A.A.F. 1997).

As we noted in Catalani, our Court has not attempted to develop a comprehensive definition of "new matter." Id. at 326. The nonbinding Discussion accompanying R.C.M. 1106(f)(7) provides a number of examples:

> "New matter" includes discussion of the effect of new decisions on issues in the case, matter from outside the record of trial, and issues not previously discussed. "New matter" does not ordinarily include any discussion by the staff judge advocate . . . of the correctness of the initial defense comments on the recommendation.

The failure to serve new matter on the defense is not prejudicial if the new matter is "neutral, neither derogatory nor adverse to appellant, or if it is so trivial as to be nonprejudicial." Catalani, 46 M.J. at 326 (citing United States v. Jones, 44 M.J. 242, 244 (C.A.A.F. 1996)) (quotation marks omitted). "[I]f an appellant makes some colorable showing of

4

possible prejudice, we will give that appellant the benefit of the doubt and we will not speculate on what the convening authority might have done if defense counsel had been given an opportunity to comment." Id. at 327 (quoting Jones, 44 M.J. at 244) (quotation marks omitted). The burden is on an appellant to "demonstrate prejudice by stating what, if anything, would have been submitted to deny, counter, or explain the new matter." United States v. Chatman, 46 M.J. 321, 323 (C.A.A.F. 1997) (quotation marks omitted). Although the threshold is "low," Catalani, 46 M.J. at 327, an appellant must demonstrate that the proffered response to the unserved addendum "could have produced a different result." United States v. Brown, 54 M.J. 289, 293 (C.A.A.F. 2000).

    B.   POST-TRIAL PROCEEDINGS IN APPELLANT'S CASE

    Following trial, the deputy SJA prepared a post-trial recommendation to the convening authority under R.C.M. 1106, which he served on defense counsel. The recommendation noted that Appellant pleaded guilty pursuant to a pretrial agreement. In summarizing the offenses, the deputy SJA noted that Appellant committed the offenses with a coworker at a military mail facility. Appellant and his coworker entered a secured building without authority on several occasions at night, opened sealed mail, removed over $15,000 worth of electronic equipment and jewelry, and kept most of the items in the coworker's dorm room.

The deputy SJA noted that Appellant admitted to stealing the property in order to pawn it.

Following receipt of the deputy SJA's recommendation, defense counsel submitted a request for clemency to the convening authority, which included a memorandum from Appellant requesting clemency. The defense asked the convening authority to reduce the adjudged dishonorable discharge to a bad-conduct discharge and to disapprove the $15,000 fine. Defense counsel noted that a dishonorable discharge is the "worst type" of discharge that an airman could receive. The defense counsel asked the convening authority to view Appellant's misconduct as the mistake of a person who simply took "advantage of an opportunity in his workplace," which defense counsel suggested was not as serious as the "depravity" of a person who "knowingly inflicts harm on others or puts lives and safety in danger." Appellant also asked the convening authority to disapprove the dishonorable discharge so that he would not be placed "in the same category with murderers, rapists, armed robbers, and individuals like that." Defense counsel noted that a bad-conduct discharge would have serious consequences for Appellant but argued that it would be "more proportionate [to] his actions."

With respect to the fine, defense counsel noted that the stolen items were recovered from the dorm rooms, that there was

no evidence that Appellant profited from the thefts, and that the fine was out of proportion to the amount that could have been obtained from a pawn shop had they actually pawned the stolen items.  Defense counsel also stated that Appellant came from a family of limited means, so that the family would be faced with the difficult choice of either suffering financial hardship in order to pay the fine or standing by while Appellant endured an additional eight months of contingent confinement for not paying the fine.

The deputy SJA then prepared an Addendum, which was endorsed by the SJA.  The Addendum specifically directed the convening authority's attention to the submissions by Appellant and defense counsel, and then provided a detailed summary of the defense request for clemency.  The Addendum set forth the defense position that there was no evidence that Appellant and his coworker profited from the thefts, that the property was recovered from the dorm rooms, and that the $15,000 fine was out of proportion to whatever profits might have been realized if the stolen items had been pawned.  The Addendum also stated that Appellant's family would suffer from either having to pay the fine or watching him spend additional time in jail under the contingent confinement clause.

After describing the defense submission, the deputy SJA offered a number of observations:  (1) Appellant would not be

asking for a change in discharge if he had thought of the consequences before he committed the offenses; (2) issuance of a dishonorable discharge is not limited to cases of violence, but instead is determined under the circumstances of each case; and (3) the fine was appropriate in view of the value of the property. The deputy SJA added:

> In arguing the accused didn't profit from his crimes because he didn't turn the items he stole into cash before he was caught (the accused told the judge he saw the thefts as a way to repay a large sum of money he owed his grandmother), defense counsel ignores the fact the accused had the benefit of valuable property he didn't pay for; property that had a value of approximately $15,000. Therefore, there is a clear nexus between the fine the accused received and the crimes he committed. While it appears the accused's family may lend him their financial support to once again bail him out of a situation of his own making, that shouldn't dissuade you from approving what is an otherwise appropriate consequence of the accused's misconduct. Not approving the adjudged fine would give the accused a windfall he doesn't deserve.

The SJA did not serve the Addendum on the defense. As a result, the defense did not have an opportunity to comment on the Addendum before the convening authority approved the sentence, including the dishonorable discharge, the fine, and the contingent confinement.

On appeal, the defense has submitted affidavits from trial defense counsel and Appellant describing what they would have

said if they had been given the opportunity to comment on the Addendum. According to defense counsel and Appellant, the defense would have responded by: (1) emphasizing that a bad-conduct discharge was more appropriate than a dishonorable discharge in view of the "significant difference between a young airman who succumbs to the temptation offered by inadequate security at his workplace and an Air Force member who intentionally causes physical harm to another or who directly threatens the security of individuals by entering and stealing from their homes"; (2) Appellant regretted his misconduct, confessed, accepted responsibility, and learned how to avoid getting into trouble; (3) Appellant did not "benefit" from the stolen property because there was no evidence that any of the property was used, damaged, degraded, or sold; (4) the property was recovered in good condition; (5) the $15,000 retail price was "greatly disproportionate to whatever benefit AB [Airman Basic] Frederickson might have derived"; (6) the $15,000 fine would impose significant loss and anguish on the innocent members of Appellant's family; and (7) there was no "windfall" for Appellant because he did not profit and a bad-conduct discharge would still impose a significant punishment on him.

## II.  DISCUSSION

In the present appeal, Appellant contends that the Addendum contained new matter because it implied incorrectly that Appellant was unrepentant, that he profited financially from the thefts, and that he personally used the stolen items.  In addition, Appellant contends that the tone of the Addendum constituted new matter because it characterized Appellant's conduct in a derogatory and condescending manner.

For purposes of this appeal, we shall assume, without deciding, that the implications and tone of the Addendum constituted "new matter" that should have been served on the defense.  To determine whether Appellant has made a colorable showing of possible prejudice, we must consider whether the proffered defense responses to the unserved Addendum could have produced a different result by the convening authority.  See supra Section I.A.

The proffered defense responses reiterate what the defense previously submitted to the convening authority during the post-trial proceedings.  While there may be cases in which loss of the opportunity for such repetition is sufficient to demonstrate prejudice, this is not such a case.  Here, the Addendum prepared by the deputy SJA provided a detailed summary of the defense submission.  In that context, the likelihood that the convening authority would have misinterpreted the deputy SJA's comments in

the manner suggested by the defense was marginal, at best. Under these circumstances, the proffered responses, which relied on previously submitted material, were insufficient to meet the defense burden of demonstrating that service of the Addendum on the defense could have produced a different result from the convening authority.  See supra Section I.A.

Although we conclude that Appellant has not established the requisite showing of prejudice in this case, we emphasize that SJAs can preclude unnecessary appellate litigation by providing convening authorities with addenda only when necessary and by broadly construing the term "new matter" for purposes of providing servicemembers with an opportunity to respond to addenda.  See United States v. Leal, 44 M.J. 235, 237 (C.A.A.F. 1996).

## III.  CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.