**CORRECTED COPY**

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*

**UNITED STATES, Appellee***
**v.**
**Private E1 TREVOR R. FORDYCE**
**United States Army, Appellant****

ARMY 20090160

Headquarters, XVIII Airborne Corps and Fort Bragg
Patrick J. Parrish, Military Judge (arraignment)
Kirsten V.C. Brunson, Military Judge (trial) Colonel Gary A. Loxley, Staff Judge
Advocate (trial)
Colonel Barry R. Robinson, Acting Staff Judge Advocate (recommendation)

For Appellant: Colonel Mark Tellitocci, JA; Lieutenant Colonel Matthew M. Miller,
JA; Major Grace M. Gallagher, JA; Lieutenant Colonel Norman R. Zamboni, JA (on
brief); Colonel Mark Tellitocci, JA; Lieutenant Colonel Matthew M. Miller, JA;
Major Grace M. Gallagher, JA; Captain Todd Lindquist, JA (on reply brief).

For Appellee: Colonel Norman F.J. Allen, III, JA; Lieutenant Colonel Martha L.
Foss, JA; Major Christopher B. Burgess, JA; Captain Madeline F. Yanford, JA (on
brief).

6 May 2010

------------------------------------------
OPINION OF THE COURT
------------------------------------------

CONN, Senior Judge:

A military judge, sitting as a general court-martial, convicted appellant,
contrary to his pleas, of wrongful use of marijuana and larceny, in violation of
Articles 112a and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 921
[hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct
discharge, confinement for twelve months, and forfeiture of $500.00 pay per month
for six months. The convening authority approved the adjudged sentence.

This case is before the court for review under Article 66, UCMJ. Appellant
asserts ineffective assistance of counsel during the post-trial processing of his case.
Appellant specifically alleges he suffered prejudicial error because his defense
counsel submitted clemency matters to the convening authority without input from
appellant and failed to submit a request to defer and waive forfeitures. Without

*Corrected
**Corrected

reaching the ultimate issue of ineffective assistance, we find appellant has established the requisite showing of possible prejudice and order a new review and action.

## BACKGROUND

At his sentencing hearing on 25 February 2009, appellant made an unsworn statement, explaining he had a wife and five children. His enlisted record brief, admitted as a trial exhibit, reflected that three of the children relied on appellant for support, as did his wife, who was unemployed. Appellant explained, because of his conviction, his family was "at risk," because they would have no financial support.

Trial defense counsel also acknowledged appellant's family's financial situation during argument on sentence, stating appellant is "[a] soldier who has responsibilities that far outweigh his paycheck." When the military judge discussed trial defense counsel's request for a bad-conduct discharge on his behalf, appellant explained, "It's in exchange to limiting the confinement because someone has to provide for me and my family because my wife, at this time, she don't work. And we have five kids altogether."

On 31 March 2009, the trial defense counsel submitted a petition for clemency pursuant to Rule for Courts-Martial [hereinafter R.C.M.] 1105 and 1106, which stated, "PVT Fordyce is a family man who supports his wife and five step-children. His income is their sole source of support. Currently, his wife is not working as all the children are under 6 years of age." Counsel went on to argue for clemency in the form of a sentence reduction. She did not request either deferral or waiver of forfeitures on appellant's behalf. The submission did not include a statement from appellant or any other enclosures.

In support of his allegation of ineffective assistance of counsel, appellant submitted a declaration to this court. In his declaration, appellant asserts two matters. First, appellant claims he had no communications with his defense counsel after his trial, and she afforded him no opportunity to submit clemency matters to the convening authority. Appellant asserts if he had been afforded the opportunity, he would have submitted a personal statement detailing his obligations to his family and explaining his immigrant status, a letter from his mother, and a request for deferral and waiver of forfeitures. Second, appellant specifically avers his trial defense counsel never explained deferral or waiver of forfeitures to him. Appellant states had he known of the option to do so, he would have requested waiver of forfeitures.

2

Trial defense counsel also submitted an affidavit. In it, she attested to several telephonic conversations with appellant while he was confined. Defense counsel asserts during these conversations appellant approved of the substance of matters submitted on his behalf pursuant to R.C.M. 1105 and elected not to submit a personal statement or other matters. Regarding deferral and waiver of forfeitures, trial defense counsel notes she used a standard appellate rights advice form to explain appellant's rights to him prior to trial. She states, however, "The Post Trial and Appellate Rights Form (PTAR) does not mention waiver. I cannot specifically recall counseling PVT Fordyce on waiver. Therefore, I believe PVT Fordyce's allegation may be true as to the failure to advise him regarding waiver of forfeitures." Counsel goes on to note that "Paragraph 11 of the PTAR contains advice on deferral, and I used this form to advise PVT Fordyce on his post-trial rights, which he later signed . . . I know I covered deferral in paragraph 11, and I recall sticking very close to that form." Trial defense counsel does not aver that appellant made a deferral request, however, nor does she explain why he failed to do so.

## DISCUSSION

*Strickland v. Washington,* 466 U.S. 668, 687 (1984), established a two-part test for ineffective assistance of counsel: an appellant must show both deficient performance and prejudice from that deficiency. Because of the highly discretionary nature of the convening authority's clemency power, we give an appellant the benefit of the doubt and find there is a material prejudice to the substantial rights of an appellant if there is an error and an appellant makes some colorable showing of possible prejudice. *United States v. Lee,* 52 M.J. 51, 53 (C.A.A.F. 1999).

*Failure to Advise on Request to Waive Forfeitures for Dependents*

First, we consider appellant's assertion trial defense counsel did not advise him of his right to request waiver of the forfeitures imposed as a result of his court-martial sentence. When, as here, an appellant submits a declaration under penalty of perjury averring his trial defense counsel never advised him of his opportunity to submit a request to waive forfeitures, we must determine whether the claim of ineffectiveness of counsel can be resolved without recourse to a post-trial evidentiary hearing. Since appellant's affidavit, as it pertains to the waiver of forfeitures, is not rebutted, this court may decide the legal issue based on the uncontroverted fact appellant was not advised of his opportunity to submit a request for waiver of forfeitures. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997) ("[I]f the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an

3

affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.").

Under Article 58b, UCMJ, if an accused has dependents,[1] a convening authority "may waive any or all of the [automatic] forfeitures of pay and allowances . . . for a period not to exceed six months," and such money "shall be paid . . . to the dependents of the accused." *See also* R.C.M. 1101(d)(1).  We note Article 58b, UCMJ has been in effect for more than fourteen years.  *See* National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, 110 Stat 186 (1996). While admittedly a complex statute, our superior court clarified any ambiguities in 2002 when it clearly delineated the relevant provisions for waiver of forfeitures, as well as the interplay of deferral pursuant to Article 57b, UCMJ.  *United States v. Emminizer,* 56 M.J. 441 (C.A.A.F. 2002).  As the court succinctly outlined:

> First, upon application of the accused, the convening authority may defer a mandatory forfeiture until the date on which the convening authority approves the sentence under Article 60, and may rescind such deferment at any time.  Art. 58b(a)(1); *see* Art. 57(a)(2).  Second, if the accused has dependents, the convening authority has discretion to provide transitional compensation to such dependents for a limited period of time.  In such a case, the convening authority may waive all or part of any mandatory forfeitures required by Article 58b(a) for a period not to exceed six months, and the mandatory forfeitures subject to such a waiver are paid directly to dependents of the accused.  Art. 58b(b).

*Id*. at 443-44.

Trial defense counsel's affidavit explained she advised appellant of certain options listed on an apparently "standard" post-trial and appellate rights form.  That form, however, omitted any discussion of waiver of forfeitures for the benefit of dependents.  Counsel are responsible for evaluating compliance of standard forms with the current state of the law.[2]  Waiver of forfeiture is a well-established

---

[1] We note Army policy disfavors use of the term "dependents" and instead uses "family members."  We use the former term here because that is the language of Article 58b.

[2] A simple explanation of Article 58b in appellant's post-trial rights form, along with an explicit election, might well have mooted this issue.  For example, "If I have

provision of law and has been in effect since 1996. Our court, like our superior court in *Emminizer*, has written opinions emphasizing interpretation and application of this provision. *See, e.g., United States v. Moralez*, 65 M.J. 665 (Army Ct. Crim. App. 2007). It is not a new, novel, or obscure aspect of military criminal law practice. We expect defense counsel to fully inform their clients of this provision and, when appropriate, advocate its application on their clients' behalf.

It is advisable that a soldier personally request waiver and articulate the reasons for the request. Unlike deferral, however, a court-martialed soldier need not personally request waiver; a defense counsel may request it on an appellant's behalf, and a convening authority may grant waiver sua sponte. Lieutenant Colonel (Judge) Christopher T. Fredrickson. *Deferring and Waiving Forfeitures: Help the Government Help Your Client*, Army Lawyer, Dec. 2009 at 44.

Trial defense counsel, in advising appellant, used a standard form ostensibly provided to her to advise her client on post-trial matters. As such, it is difficult to ascertain whether the failure to advise appellant on waiver of forfeitures was a personal rather than institutional shortcoming. Under these circumstances, we decline to make a specific finding that the presumption of professional competence has been overcome. *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000). Although we do not conclude trial defense counsel was ineffective, we nonetheless find there was error in the post-trial handling of appellant's case, because we are not convinced appellant was "afforded a full opportunity to present matters to the convening authority prior to his action on the case." *United States v. Hawkins*, 34 M.J. 991, 995 (A.C.M.R. 1992). To prevail on an allegation of post-trial error, appellant must assert prejudice as a result of the error. *United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F. 1998). In post-trial matters involving a convening authority's decision, "there is material prejudice to the substantial rights of an appellant if there is an error and the appellant 'makes some colorable showing of possible prejudice.'" *Id*. at 289 (quoting *United States v. Chatman*, 46 M.J. 321, 323-24 (C.A.A.F. 1997)).

Regarding prejudice, this court need not decide whether the convening authority would have granted the request for waiver. In this case, it is uncontested

---

(continued . . .)
financial dependents, I may request the convening authority waive any or all automatic forfeitures of pay and allowances, to be paid to my dependents during *** any period of confinement or parole not to exceed six (6) months. I do____do not____ have DEERs enrolled dependents. If applicable, I request___do not request____ my defense counsel to petition the convening authority to waive automatic forfeitures for the benefits of my dependent(s)."

***Corrected

that appellant was not advised of the significant and well-established post-trial option to request waiver of mandatory forfeitures pursuant to Article 58b(b), UCMJ for the benefit of his wife and children. Appellant has submitted a declaration averring he would have done so, and established from the record of trial the obvious and logical basis to support his request. Appellant, therefore, established a colorable showing of prejudice. *Wheelus*, 49 M.J. at 289. On that basis, we order a new review and action.

Though we did not reach a conclusion as to whether appellant's trial defense counsel was ineffective, we do not suggest approval of counsel's reliance on a standard form, which omits advice regarding Article 58b. While we are confident a new review and action will fully protect appellant's interest, the better practice of fully informing appellant of his post-trial rights in writing would have avoided the burden and expenditure of resources that will be occasioned by the new review and action we order here.

While our court has leniently addressed failures by trial defense counsel to inform accused with dependents of the opportunity to submit a request for waiver of forfeitures pursuant to Article 58b, UCMJ, our patience is at a limit. In the future, such failures will be a significant factor when this court evaluates at least the first prong of *Strickland* related to allegations of ineffective assistance of counsel where an accused claims he was unaware of his right to request waiver of forfeitures for dependents.

*Alleged Denial of Opportunity to Personally Submit Matters*

Our decision to order a new review and action moots appellant's assignment of error related to an alleged lack of post-trial consultation and, specifically, his opportunity to submit matters under R.C.M. 1105 and 1106. If he did not before, appellant will now have such an opportunity. Nonetheless, we wish to take this opportunity to suggest practices that might avoid unnecessary appellate litigation on the issue of post-trial representation, raised with inordinate regularity before our court.[3] Specifically, we strongly encourage adoption of practices, which make a complete record of the post-trial process.

---

[3] *See United States v. Scheuerman,* 67 M.J. 709, 712 n. 3 (Army Ct. Crim. App. 2009); *United States v. Galloway* ARMY 20080833 (Army Ct. Crim. App. 15 Apr. 2010) (unpub.); *United States v. Kirou,* ARMY 20081064 (Army Ct. Crim. App. 8 Apr. 2010) (unpub.); *United States v. Howard*, ARMY 20080807 (Army Ct. Crim. App. 23 Dec. 2009) (unpub.); *United States v. Mercado*, ARMY 20080912 (Army Ct. Crim. App. 30 Sept. 2009) (unpub.); *United States v. Davis,* ARMY 20070808 (Army Ct. Crim. App. 18 Aug. 2009).

First, when possible, we urge the laudatory practice of some counsel to have an accused co-sign R.C.M. 1105 and 1106 submissions, or at a minimum sign an acknowledgement that the matters submitted are all the accused wishes to submit. This is particularly the case where an accused does not provide a personal statement as part of the submission.

Second, we urge a practice, which would demonstrate on the record that appellant received both proper written advice on post-trial rights and the opportunity to submit post-trial matters to the convening authority. In this case, we note the post-trial and appellate rights form appended to the record substantively informed appellant of his personal opportunity to submit matters pursuant to R.C.M. 1105 and 1106. This is typical of virtually all such similar forms this court reviews. This alone, however, does not fully establish appellant had actual notice of when he needed to submit matters, triggered by receipt of the staff judge advocate recommendation (SJAR) or authenticated record of trial (ROT). R.C.M. 1105(c)(1). At a minimum, the accused must be served with a copy of the SJAR, unless impracticable or the accused affirmatively requests otherwise in writing on the record.[4] R.C.M. 1106(f)(1). A copy must also separately be served on accused's counsel. *Id*.

Inexplicably, in appellant's written rights form, he elected to have the SJAR served only on his counsel. Had appellant not affirmatively waived service of the SJAR, proof of that service in the record would presumptively demonstrate appellant was on notice not only of his right to submit matters, reflected by the written post-trial and appellate rights advice, but also the deadline to do so following receipt of the SJAR. Because this was not done in appellant's case, trial defense counsel effectively bore the sole responsibility to ensure appellant availed himself of that opportunity.

We note with approval the amendments to the Military Judges' Benchbook, subsequent to appellant's trial. Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, paras. 2-4-2; 2-6-14 (1 Jan. 2010).[5] These changes to a

---

[4] An accused is also entitled to a copy of the ROT, receipt of which would also trigger notice to an accused of the requirement to submit matters under R.C.M. 1105 and 1106. Article 54(d), UCMJ provides, "A copy of the record of the proceedings of each general and special court-martial shall be given to the accused as soon as it is authenticated." *See also* R.C.M. 1104(b)(1)(A). However, an accused may elect substitute service of the authenticated record upon his trial defense counsel in accordance with R.C.M. 1104(b)(1)(C), as was the case here.

[5] 2-4-2 & 2–6–14. POST-TRIAL AND APPELLATE RIGHTS ADVICE (1 January 2010)

7

recommended discussion with an accused about post-trial rights now include an inquiry into the accused's knowledge of what he can submit to the convening authority, including "requests for deferment and waiver of forfeitures" and advice to be actively involved in submission of post-trial matters to the convening authority. *Id.* This more robust inquiry with an accused strengthens an objective record that an accused has been fully apprised of his or her post-trial and appellate rights.

---

(continued . . .)

*MJ: Did your defense counsel explain to you what matters you may submit to the convening authority for his/her consideration under RCM 1105 and RCM 1106?*

*ACC: (Responds.)*

*MJ: Did your defense counsel explain to you that under RCM 1105 and RCM 1106 you may submit any matters to the convening authority to include, but not limited to, a personal letter and documents, letters and documents from any other person, requests for deferment and waiver of forfeitures, and any other matter you desire for the convening authority to consider before taking action on your case?*

*ACC: (Responds.)*

*MJ: Do you understand that it is your responsibility to keep in contact with your defense counsel and let him/her know your desires in this regard?*

*ACC: (Responds.)*

*MJ: Do you understand that if your defense counsel cannot locate you it will be difficult for him/her to know what to submit for you to the convening authority?*

*ACC: (Responds.)*

*MJ: Now, if your defense counsel tries to contact you but is unsuccessful, do you authorize him or her to submit clemency matters on your behalf to the convening authority as he or she deems appropriate?*

*ACC: (Responds.)*

*MJ: _____, do you have any questions about your post-trial and appellate rights?*

*ACC: (Responds.)*

**DECISION**

The convening authority's initial action, dated 2 April 2009, is set aside. The record of trial is returned to The Judge Advocate General for a new staff judge advocate recommendation and a new initial action by the same or a different convening authority in accordance with Article 60(c)-(e), UCMJ. This remedy will afford appellant the requested opportunity to submit clemency matters, including a request for waiver of forfeitures, to the convening authority.

Chief Judge TOZZI, Senior Judge JOHNSON, Judge HOFFMAN, Judge SIMS, and Judge CARLTON concur.

Judge GIFFORD took no part in the decision of this case.

COOK, Judge, concurring in the result:

I concur with my esteemed colleagues in the result of this case and the importance of trial defense counsel adequately advising and memorializing the post-trial advice rendered to their clients. I write briefly, however, to address two matters. First, the defense counsel's failure to advise the accused concerning waiver of forfeitures was inexcusable under the facts and circumstances of this case, and I would find the counsel ineffective for this dereliction.

Second, I do not enthusiastically share that portion of the opinion, which approves of amendments to the Military Judges' Benchbook requiring more colloquy by military judges with an accused concerning discussions with defense counsel about post-trial appellate rights. The Trial Defense Service community must shoulder the responsibility for systems of practice that ensure relatively non-complex matters are properly handled by individual defense counsel. Providing a trial judiciary security blanket for defense counsel does relatively little to energize the defense community to meet this responsibility—a point established by the effort of this court to once again write concerning a claim of ineffective assistance of counsel based on lack of proper advice by a defense counsel concerning waiver of forfeitures. While a standard form is no substitute for institutional training and self-development, had there been an item addressing waiver of forfeitures on a standard form, the odds of this defense counsel covering waiver of forfeitures would have been greatly improved.

HAM, Judge, concurring in the result:

9

I agree we must return this case for a new post-trial recommendation and action. I conclude we must do so, however, because trial defense counsel provided ineffective assistance during the post-trial process.

Allegations of ineffective assistance are examined under the well-known standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Appellant bears the burden of showing first, that his counsel's performance was deficient, and second, that his counsel's deficient performance prejudiced him. *Id.* at 687. To prove deficient performance, "Appellant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999) (quoting *United States v. Wiley*, 47 M.J. 158, 159 (C.A.A.F. 1997)). In the context of an allegation of ineffective assistance during the post-trial phase, because of the highly discretionary nature of the convening authority's clemency power, appellant meets this burden if he makes "some colorable showing of possible prejudice." *Lee,* 52 M.J. at 53 (citing *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)). *See also United States v. Rosenthal*, 62 M.J. 261, 263 (C.A.A.F. 2005). While an appellant does not make a colorable showing of possible prejudice by "sheer speculation," *United States v. Brown*, 54 M.J. 289, 293 (C.A.A.F. 2000), an appellant does meet his burden where he demonstrates that his actions, in response to proper advice from his defense counsel, "could have produced a different result." *United States v. Frederickson*, 63 M.J. 55, 57 (C.A.A.F. 2006) (citation omitted). Effective assistance of counsel is especially important during the post-trial phase because it is the accused's "best hope for relief." *United States v. Howard,* 47 M.J. 104, 106 (C.A.A.F. 1997).

Appellant alleges, and trial defense counsel does not meaningfully dispute, that he was not advised of the right to request waiver of automatic forfeitures in accordance with Article 58b(b), UCMJ. The failure to do so more than a dozen years after the effective date of Article 58b because it is not part of a facially deficient stock "post-trial and appellate rights form" fell below any objective standard of reasonableness, and constitutes deficient performance.[1] The lack of

---

[1] The post-trial and appellate rights form trial defense counsel used in this case is wrong in more areas than its patently deficient failure to discuss waiver of automatic forfeitures. In fact, although appellant was tried by general court-martial, the form appears to address post-trial rights applicable only to trial by special court-martial. Contrary to the majority opinion, this makes the deficiency here clearly a personal, rather than an institutional failing, even in the absence of correct advice on the form itself. Simply stated: not only is the form wrong—it is the wrong form. For example, the form misstates appellant's right to have his case heard by this court, stating that he is only entitled to our review "if the convening authority approves a bad-conduct discharge." Of course, this court's jurisdiction extends, *inter alia*, to

meaningful dispute over whether defense counsel actually provided the advice at issue also serves to distinguish this case from *United States v. Key*, where the appellant merely could not recall his defense counsel advising him of his right to submit a request for waiver of forfeitures. 57 M.J. 246, 249 (C.A.A.F. 2002) (holding that appellant's assertion was "too equivocal and ambiguous to overcome the presumption that his counsel were competent," and fell short of the standard for compelling defense counsel to justify their actions).

In addition, under the facts of this case as set forth in the majority opinion, appellant has met his burden of demonstrating a "colorable showing of possible prejudice." Therefore, I also conclude that defense counsel's deficient performance prejudiced appellant.[2]

---

(continued . . .)
cases in which the approved sentence includes either a punitive discharge "or confinement for one year or more." UCMJ art. 66(b)(1). Second, the paragraph of the form that partially discusses forfeitures states that "by operation of Article 58(b) [sic]," a sentence of appropriate severity "will result in two-thirds forfeiture of pay." Again, appellant faced trial by *general court-martial*, and faced forfeiture of *all pay and allowances* if he received either a punitive discharge or confinement for greater than six months, both of which, of course, he did receive. UCMJ art. 58b(a)(1) ("The pay and allowances [automatically] forfeited, in the case of a general court-martial, shall be all pay and allowances due that member during such period and, in the case of a special court-martial, shall be two-thirds of all pay due that member during such period.") These are fundamental concepts, and the mistakes here are flagrant. One must ask, when the military judge inquired of appellant if his defense counsel had explained his post-trial and appellate rights to him and whether he understood those rights, to what rights was the military judge referring? As his trial defense counsel recalls "sticking very close to that form" it is apparent that appellant was not properly or competently advised of his post-trial and appellate rights.

[2] The court in *Key* seems to require a higher threshold for appellant to carry the burden of proving prejudice due to deficient performance of counsel post-trial. 57 M.J. at 249. In *Key,* appellant did not establish prejudice where "there was no reasonable likelihood that the convening authority would have granted a request to waive forfeitures" under the facts of the case, particularly in the absence of an "offer of proof regarding what [appellant] would or could have submitted to support his waiver request." *Id.* However, since the holding in *Key* was that the appellant did not overcome the presumption of defense counsel competence, the court's discussion of prejudice is *dicta*. In any event, the court continued to follow the *Lee/Wheelus* analysis in cases decided after *Key*. *See Rosenthal*, 62 M.J. at 263.

11

Defense counsel's inexcusable failure to advise appellant of his right to request waiver of automatic forfeitures is somewhat complicated by appellant's adjudged forfeiture of $500.00 pay per month for six months. [3] Nonetheless, waiver of automatic forfeitures beginning as early as their effective date (in this case, fourteen days after sentence was adjudged on February 25, 2009) and continuing for six months or until appellant's release from confinement or parole, whichever occurred first, was still an option to assist appellant's unemployed wife and children. *See Emminizer*, 56 M.J. at 445 (stating, "if partial forfeitures take effect under Article 57(a), the waiver authority applies only to any mandatory forfeitures required under Article 58b"). Appellant, in his unsworn statement, and trial defense counsel, in both her sentencing argument and post-trial submission, discussed or referenced his family obligations.

Moreover, defense counsel's failure here is exacerbated by her request in her post-trial submission that the convening authority grant as clemency "[d]isapproval of the adjudged forfeitures." Even if granted, absent a request for and approval of some form of clemency concerning the automatic forfeitures, neither appellant nor his dependents would receive a dime during his period of confinement or parole because, by operation of law, appellant forfeited all of his pay and allowances due during that period. UCMJ art. 58b(a)(1). [4] This demonstrates to me the strong

---

[3] In general, a better overall defense strategy focused on monetary assistance to dependents is to request deferral of adjudged and automatic forfeitures from their effective date until action, disapproval of adjudged forfeitures at action, and waiver of automatic forfeitures for six months from action or until appellant's release from confinement or parole, whichever occurs first, with direction that such waived forfeitures go to appellant's dependents. *See* UCMJ arts. 57(a)(2) (deferral of adjudged forfeitures), 58b(a)(1) (deferral of automatic forfeitures), and 58b(b)(waiver of automatic forfeitures), 60(c)(2) (disapproval of sentence in whole or in part). *See United States v. Emminizer*, 56 M.J. 441 (C.A.A.F. 2002) ; *United States v. Moralez*, 65 M.J. 665 (Army Ct. Crim. App. 2007). The dispute in this case, however, centers only on the failure to advise of the right to request waiver of automatic forfeitures, which the convening authority could order paid to appellant's dependents for a period of up to six months beginning at any point from the date the mandatory forfeitures took effect until six months from action or appellant's release from confinement or parole, whichever occurred first.

[4] Appellant spent 183 days in pretrial confinement. He was tried and began his period of post-trial confinement on February 25, 2009, and his adjudged and automatic forfeitures took effect fourteen days later. The convening authority took action in appellant's case on April 2, 2009. Finally, documents in the record of trial indicate appellant began a period of excess leave on June 18, 2009, during which he was not entitled to receive pay and allowances. *United States v. Paz-Medina*, 56

possibility that, apart from improperly failing to advise appellant of his options with regard to waiver of automatic forfeitures, trial defense counsel either did not understand them or, worse, was not aware of them.[5]

Both the majority and the separate concurring opinions reflect this court's *en banc* unmistakable frustration and disappointment at both the performance of counsel in this case and the number of allegations of post-trial ineffective assistance of counsel appellants are lodging before this court that result in new post-trial recommendations and actions. Defense counsel should harbor no illusions otherwise. Nearly twenty years ago, this court felt

> compelled to comment further on the responsibility of defense counsel to adequately represent their clients in post-trial matters. Former Chief Judge Everett . . . has observed that the right to counsel under the UCMJ is broader than that provided by the Sixth Amendment perhaps because "Congress may have concluded that servicemembers, who risk their lives for their country, should be granted a right to counsel greater than that which would be minimally required by the Constitution." *United States v. Johnson*, 21 M.J. 211, 213 (C.M.A. 1986). To meet this obligation in the post-trial phase, trial defense counsel . . . must do more than write half-hearted post-trial submissions just to meet an obligation of the Rules for Courts-Martial. We expect all defense counsel

---

(continued . . .)
M.J. 501, 503 n.6 (Army Ct. Crim. App. 2001) (citations omitted). "When a servicemember is not entitled to compensation covered by the mandatory forfeiture provisions of Article 58b, [UCMJ], there is nothing to waive." *Emminizer*, 56 M.J. at 444. *See also Moralez*, 65 M.J. at 667 (finding that even if the staff judge advocate rendered incomplete advice to the convening authority concerning forfeitures, because appellant, in all likelihood, was released from confinement by the time of action, appellant would not have been entitled to forfeiture relief as there was no longer any pay to forfeit).

[5] The Supreme Court recently found deficient performance where a defense counsel failed to advise a client concerning the immigration consequences of a federal conviction—matters that might have intuitively seemed beyond a criminal attorney's knowledge and expertise. *See Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). There is simply no excuse for a military defense counsel to be unversed in the area of automatic and adjudged forfeitures, matters falling directly in their area of practice.

> to perform the post-trial representation function in a
> professional manner.

*United States v. Carmack*, 37 M.J. 765, 769 (A.C.M.R. 1993). Simply stated, this case should serve as military defense counsel's "wake up call" for zealous, competent post-trial representation, a call this court should not have had to make once again for this generation of military justice practitioners.

A trial defense counsel's responsibilities do not cease at the end of trial. R.C.M. 1105 and 1106. A trial defense counsel has the responsibility to review a case after trial and to bring forth all legal issues and clemency matters which may assist his client." *United States v. Garner*, 34 M.J. 575, 577 (A.C.M.R. 1992) (quoting *United States v. Harris*, 30 M.J. 580, 582 (A.C.M.R. 1990)). "The law makes no exception for wartime conditions." *United State v. Hawkins*, 34 M.J. 991, 995, n.6 (A.C.M.R. 1992). It is incomprehensible to me that we should once again have to "reinvent the wheel" in this area. *See United States v. Palenius*, 2 M.J. 86, 93 (C.M.A. 1977) (discussing post-trial responsibilities of defense counsel). Scores of cases from this court and our predecessor, the Army Court of Military Review, and our superior court and its predecessor, the Court of Military Appeals, have set forth how defense counsel should zealously and competently perform their post-trial duties, many of them, unfortunately, responding to allegations that trial defense counsel were ineffective in those duties.

While trial defense counsel perform "myriad duties" post-trial for their clients, *id.*, one can glean from the existing case law that there are five main components to effectively carry out counsel's post-trial duties. First, at issue in this case, defense counsel must fully and accurately advise their soldier-clients of their post-trial and appellant rights, including those rights concerning deferral and waiver of forfeitures as applied to both adjudged and automatic forfeitures, and then defense counsel must execute their client's decisions concerning those rights. *See Palenius*, 2 M.J. at 93. *See also* R.C.M. 502(d)(6) discussion (E).

Second, defense counsel must maintain an ongoing attorney-client relationship during the post-trial period, including regular communication with their soldier-clients. *Palenius*, 2 M.J. at 93. *See also United States v. Hicks*, 47 M.J. 90, 93 (C.A.A.F. 1997) ("Just as counsel should consult with and keep the client informed as to what is being done on the client's behalf during the pretrial and trial stages, so too should counsel engage in informative discussions with the client during the post-trial stage"); *United States v. Clemente*, 51 M.J. 547, 551 (Army Ct. Crim. App. 1999) ("[T]rial defense counsel must consult with the client regarding clemency and other matters, and must comply with the client's desires regarding submissions to the convening authority"). In the normal course of events,

> [o]nce a trial defense counsel is detailed to represent an
> accused soldier and an attorney-client relationship is
> established, absent an express release by the accused or
> good cause shown on the record, that trial defense counsel
> remains as counsel for the accused from preferral of
> charges, through action by the convening authority, and
> until appointment of appellate defense counsel.

*United States v. Starks*, 36 M.J. 1160, 1164 (A.C.M.R. 1993) (citations omitted).
*See also United States v. Iverson*, 5 M.J. 440, 442-43 (C.M.A. 1978) ("Absent a
truly extraordinary circumstance rendering virtually impossible the continuation of
the [attorney-client] relationship, only the accused may terminate the existing
affiliation with his trial defense counsel prior to the case reaching the appellate
level.") Good cause is not established by administrative convenience, nor does it
include "reassignment of defense counsel, even to a distant location." *Hawkins*, 34
M.J. at 994 (citing *Iverson*, 5 M.J. at 442). *See also* R.C.M. 505(d)(2)(B) and
505(f). Unlike the Coast Guard Court of Criminal Appeals, we have never held that
deployment of either the soldier or his attorney establishes good cause, and, in fact,
defense counsel routinely remain on cases despite deployment or redeployment of
either the counsel or the represented soldier. *See United States v. Garcia*, 68 M.J.
561, 565 (C.G. Ct. Crim. App. 2009). As the Army's current practice forcefully
demonstrates, deployment is not a "truly extraordinary circumstance rendering
virtually impossible the continuation of the [attorney-client] relationship." *Iverson*,
5 M.J. at 442-43.

However, if good cause exists, substitute counsel may be appointed for
purposes of post-trial representation, and the attorney-client relationship with the
original trial defense counsel may be terminated. *See Iverson*, 5 M.J. at 442. Good
cause includes "separation of the trial defense counsel from the service prior to
completion of the convening authority's action." *Hawkins*, 34 M.J. at 994 (citing
*United States v. Zarate*, 5 M.J. 219 (C.M.A. 1978) (summary disposition)); *United
States v. Davis*, 5 M.J. 451 (C.M.A. 1978). Good cause also exists where the soldier
alleges his defense counsel provided ineffective assistance at trial, so long as
counsel is aware of the allegation. *See United States v. Carter*, 40 M.J. 102 (C.M.A.
1994). In any event, if substitute counsel is appointed counsel must both establish
and maintain an attorney-client relationship throughout the post-trial period. *See,
e.g., Howard*, 47 M.J. 104 (substitute counsel failed to establish attorney-client
relationship before responding to SJA recommendation); *United States v. Miller*, 45
M.J. 149 (1996) (substitute defense counsel failed to contact client and establish
attorney-client relationship before filing response to SJA recommendation).

Regardless of whether the post-trial attorney-client relationship is continuing
or newly established, it does not end until "appellate counsel have been properly

designated and have commenced the performance of their duties, thus rendering further representation by the original trial defense attorney or those properly substituted in his place unnecessary." *Palenius*, 2 M.J. at 93. This is to ensure "the uninterrupted representation of the accused." *Id.*

Third, defense counsel must review the staff judge advocate's recommendation, and prepare his response to it. *Palenius*, 2 M.J. at 93. While counsel must consult with the soldier-client when determining whom to contact for potential clemency submissions, it is the attorney's responsibility to gather and prepare the post-trial submission, not the client's. *Garner*, 34 M.J. at 577 (quoting *Harris*, 30 M.J. 582).[6] In fact, counsel risks deficient performance if he fails to contact those persons the soldier-client identifies for clemency submissions, *United States v. Brewer*, 51 M.J. 542, 546 (Army Ct. Crim. App. 1999), or if counsel "improperly shift[s] his responsibility" to identify and gather appropriate materials to his client. *Harris*, 30 M.J. at 582 (finding counsel provided ineffective assistance post-trial when he relied on appellant and his wife to gather materials for submission). Once prepared, the attorney must discuss the contents of the clemency package with the client—the failure to do so is deficient performance. *United States v. Hood*, 47 M.J. 95, 98 (C.A.A.F. 1997); *Brewer*, 51 M.J. at 546. *See also United States v. Martinez*, 31 M.J. 524, 526 (A.C.M.R. 1990) (finding counsel ineffective where he sent draft clemency petition to appellant but never followed up to ensure appellant received it). Finally and critically in this area, counsel must qualitatively advise their soldier-clients what submissions–by the soldier and others–are most likely to result in the convening authority granting clemency. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001) ("Counsel has the responsibility to 'make an evaluative judgment' on what items to submit to the convening authority, and to so advise the client.") (quoting and citing *United States v. MacCulloch*, 40 M.J. 236, 239 (C.M.A. 1994)). "If defense counsel thought some matters should not be submitted, he should have so advised appellant." *MacCulloch,* 40 M.J. at 239.

Fourth, despite the duty to qualitatively advise the soldier-client, once defense counsel provides that advice, the defense counsel is bound to submit those matters the client elects to submit. "[C]ounsel do not have the authority unilaterally to refuse to submit matters which the client desires to submit." *United States v. Lewis*, 42 M.J. 1, 4 (C.A.A.F. 1995) ("Counsel's duty is to advise, but the final decision as to what, if anything to submit rests with the accused."). *See also Clemente*, 51 M.J. at 551 ("Hence, a defense counsel should neither submit matters over his client's objection, nor fail to present matters that the client desires the convening authority to consider"). *Accord Hood*, 47 M.J. at 97 (While "defense counsel has primary responsibility for strategic and tactical decisions . . . [d]efense counsel may not . . .

---

[6] In this regard, I specifically disagree with any suggestion in the majority opinion to the contrary.

refuse to submit matters offered by the client or submit matters over the client's objection."); *Hicks*, 47 M.J. at 93 ("Just as the accused controls the right to testify at trial . . . the accused also has the right to submit or not submit material to the convening authority over defense counsel's objection.")

Fifth and finally, overlaying the first four basic tenets, appellate defense counsel must, in consultation with the soldier-client, develop a strategy for the post-trial phase, and devise tactics designed to successfully implement that strategy and attempt to achieve its goals. *See Hood*, 47 M.J. at 97. In this case, the strategy leaping from the pages of the record was for defense counsel and appellant to seek to ameliorate the financial impact of appellant's conviction and sentence on his dependent wife and children, including a request to waive automatic forfeitures for their benefit. Because appellant was never even advised of his right to request waiver of those forfeitures that take effect by operation of law, his defense counsel rendered deficient performance. Because appellant would have submitted such a request if correctly advised, he has "show[n] what he would do to resolve the error if given the opportunity." *Wheelus*, 49 M.J. at 288. The record before us provides ample evidence of what appellant "would or could have submitted to support his waiver request. . . . [v]ague or general intimations' about the 'particular nature of the materials' that would or could have been submitted are insufficient to show prejudice." *Key*, 57 M.J. at 249 (citing and quoting *United States v. Pierce*, 40 M.J. 149, 151 (C.M.A. 1994)). Moreover, while by no means a certainty, appellant's request to waive automatic forfeitures "could have produced a different result." *Frederickson*, 63 M.J. at 57 (quoting *Brown*, 54 M.J. at 293). Accordingly, appellant has made "some colorable showing of possible prejudice," *Wheelus*, 49 M.J. at 289, and he is entitled to the relief the majority grants him. *See Paz-Medina* 56 M.J. at 504 n.10 (convening authority can retroactively waive automatic forfeitures for the benefit of appellant's family) (citation omitted).

For these reasons, I concur in the result.

BAIME, Judge, concurring in the result:

This decision troubles me, and as a result, I must concur in the result but not the means relied upon to achieve it. This case should be decided in one of two ways. First, we could find counsel's performance was deficient and prejudice resulted from that deficiency under the two-step analysis of *Strickland v. Washington*, 466 U.S. 668, 697 (1984). Alternatively, we could find the convening authority did not have the opportunity to review appellant's entire clemency submission. *See United States*

*v. Wheelus*, 49 M.J. 283, 287 (C.A.A.F. 1998).[1]  A finding of prejudice under either analysis dictates we send the case back for a new review and action.  The majority opinion resolves the case on the latter basis despite a solid foundation to decide the case on the former basis.

After reviewing trial defense counsel's actions, or in this case, inactions, I believe the legally correct conclusion is counsel was ineffective for failing to properly advise appellant on his right to request waiver of forfeitures.  Trial defense counsel wrote in her affidavit appellant's "allegation may be true as to the failure to advise him regarding waiver of forfeitures," and "[s]ince waiver is not specifically mentioned in the form [Post-Trial and Appellate Rights Form] and I do not have any independent recollection of counseling him on waiver, I believe it may be true that I did not go over it with him."

The majority opinion, after describing circumstances establishing a prima facie case of ineffective assistance of counsel satisfying both prongs of *Strickland v. Washington*, does everything but call her actions ineffective.  The majority describes actions constituting deficient performance.  The majority's decision to return the case for a new review and action demonstrates they conclude prejudice occurred.  The majority's unwillingness to explicitly link the deficient performance and prejudice together amounts to, in my mind, an overly paternalistic resolution of this case.

The court finds appellant "established a colorable showing of prejudice" and orders the case returned for a new review and action because the convening authority did not get a chance to completely review all of appellant's materials.  In light of the majority's resolution of this case under *Wheelus*, no discussion of ineffective assistance of counsel is necessary because the court declines to find trial defense counsel ineffective.

I agree with the majority that post-trial representation is becoming an issue we are facing with unfortunate regularity.  Trial defense counsel must remain vigilant throughout the entire post-trial process and zealously represent their clients until their representation fully ends and not merely until the military judge adjourns the court-martial following sentencing.

---

[1]  Our superior court has often noted, "an accused's best chance for post-trial clemency is the convening authority."  *Wheelus*, 49 M.J. at 287.  Consequently, "the convening authority's obligation to consider defense [clemency] submissions is uniquely critical to an accused."  *United States v. Hamilton*, 47 M.J. 32, 35 (C.A.A.F. 1997).  This is the approach we recently took in *United States v. Kiriou*, ARMY 20081064 (Army Ct. Crim. App. 8 Apr. 2010) (unpub.).

FORDYCE– ARMY 20090160

I would find appellant received ineffective assistance of counsel and send the case back for a new review and action.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court