UNITED STATES, Appellee,

v.

Anthony M. WHEELUS, Sergeant,
U.S. Army, Appellant.

No. 97–0599.
Crim.App. No. 9600184.

U.S. Court of Appeals for
the Armed Forces.

Argued March 3, 1998.

Decided Sept. 30, 1998.

284

For Appellant: *Captain T. Michael Guiffre* (argued); *Colonel John T. Phelps, II, Lieutenant Colonel Michael L. Walters,* and *Major Holly S.G. Coffey* (on brief); *Captain Norman R. Zamboni.*

For Appellee: *Major Lyle D. Jentzer* (argued); *Colonel Joseph E. Ross* and *Lieutenant Colonel Frederic L. Borch* (on brief); *Captain Chris A. Wendelbo.*

1. Appellant pleaded guilty to conspiracy to commit larceny; wrongful possession of marijuana; wrongful use of marijuana; wrongful possession of controlled substances with intent to distribute (2 specifications); larceny; and adultery (2 specifications), in violation of Articles 81, 112a, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 912a, 921, and 934, respectively.

2. As framed by appellant, the granted issues are:

I

WHETHER APPELLANT'S EFFORTS TO OBTAIN CLEMENCY FROM THE CONVENING AUTHORITY WERE UNFAIRLY PREJUDICED BECAUSE THE STAFF JUDGE ADVOCATE, IN HIS POSTTRIAL RECOMMENDATION, FAILED TO INFORM THE CONVENING AUTHORITY THAT APPELLANT SUFFERED OVER FIVE MONTHS OF PRETRIAL RESTRAINT PRIOR TO HIS COURT–MARTIAL.

II

WHETHER APPELLANT, WHO WAS NOT SERVED WITH A COPY OF HIS RECORD OF TRIAL IN A TIMELY MANNER AS REQUIRED BY RCM 1104, WAS "TREMENDOUSLY HINDERED" IN HIS ATTEMPT TO OBTAIN CLEMENCY SINCE HE HAD TO DRAFT A CLEMENCY LETTER BASED ENTIRELY ON HIS RECOLLECTION OF THE SENTENCING HEARING AND WAS FORCED TO RECONSTRUCT "A COMPLEX PRETRIAL RESTRICTION ISSUE" AS WELL AS "MEDICAL EVIDENCE OF HIS FATHER'S TERMINAL CANCER, AND HIS MOTHER'S DEBILITATING CARPAL TUNNEL SYNDROME."

*Opinion of the Court*

COX, Chief Judge:

This is another case involving alleged insufficiencies in the posttrial review process. A military judge, sitting alone as a general court-martial at Leighton Barracks, Wuerzburg, Germany, convicted appellant of multiple offenses, in accordance with his pleas.[1] Of a possible sentence to confinement for 46 years, total forfeitures, a fine, reduction to E-1, and a dishonorable discharge, the military judge sentenced appellant to confinement for 3 years, forfeiture of $200 pay per month for 14 months, reduction to E-1, and a dishonorable discharge. The convening authority approved the sentence (the pretrial agreement required him to disapprove any confinement in excess of 3 years). The Court of Criminal Appeals affirmed the findings and sentence in an unpublished, "short-form" opinion.

We granted review of two issues.[2] In the first, appellant complains that his efforts to obtain clemency were unfairly prejudiced because the staff judge advocate's posttrial recommendation failed to note that appellant was restricted for a period of some 6 months pending his court-martial.

RCM 1106(d)(3)(D), Manual for Courts-Martial, United States (1995 ed.), requires the staff judge advocate to "include [in the recommendation] concise information as to ... the nature and duration of any pretrial

restraint . . . ." Further, "pretrial restraint" is defined in RCM 304(a) as "moral or physical restraint on a person's liberty which is imposed before and during disposition [of] offenses." The Government concedes that appellant was under pretrial restraint; that the staff judge advocate was required to inform the convening authority of this fact in the recommendation; and that the recommendation failed to so inform the convening authority. The issue before us is whether the error prejudiced appellant's opportunity to obtain clemency from the convening authority. *See* Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a).

Prior to trial, appellant was subject to various forms of restriction from August 7, 1995, until January 17, 1996. At trial, appellant moved for sentence credit, contending that the pretrial restraint was tantamount to confinement. *See United States v. Mason,* 19 MJ 274 (CMA 1985); *cf. United States v. Schilf,* 1 MJ 251 (CMA 1976). During the proceedings on appellant's motion, appellant's commander provided the following description of the terms of the restriction:

Initially, appellant was barred from all AAFES (Exchange) facilities—because the allegations were that appellant had conspired to steal and had stolen property from AAFES. In addition, appellant was barred from contacting Private W—because the allegations were that appellant, a Sergeant E–5, had been using Private W as his agent to steal property from AAFES. Finally, the commander ordered appellant not to leave Wuerzberg without the permission of either himself or the first sergeant. Appellant was not restricted to post.

Three days later, when the commander received information that appellant had immediately sought out Private W in direct violation of his order, the commander tightened the terms of restriction substantially. Thereafter, appellant was restricted to quarters, place of duty, dining facility, and chapel. Four days later, however, the commander relaxed the terms of restriction enough to permit appellant access to the AAFES barber shop, food mall, video store, and the commissary. These conditions remained in effect until trial.

At trial, the military judge ruled that the restriction did not amount to pretrial punishment and that appellant was not entitled to credit against his sentence, with the exception of an 8–day credit for a period of 4 days in August 1995, during which appellant's ability to consult with defense counsel was inappropriately restricted. The correctness of the military judge's ruling is not before us on appeal.

In his posttrial recommendation, dated April 10, 1996, the staff judge advocate's only reference to pretrial restriction involved the 8–day credit. The staff judge advocate did not mention the approximately 6–month period during which appellant was subject to various forms of restriction prior to trial. As noted above, the Government concedes that this omission was erroneous.

Trial defense counsel submitted a posttrial memorandum, dated May 7, 1996, to the convening authority pursuant to RCM 1105. Therein, counsel requested that the convening authority disapprove the 36–month period of adjudged confinement, based upon the following clemency plea: "The reason this request is reasonable and should be granted is that SGT Wheelus's parents are elderly and in ill health." Defense counsel's clemency submission described in considerable detail the physical ailments of appellant's parents, the impact of those ailments on their lives, their "dire" financial condition, appellant's efforts to assist his parents, and the impact of appellant's confinement on their situation. In addition, the clemency request expounded upon the positive aspects of appellant's military record. In the only mention of restriction, counsel noted: "Furthermore, SGT Wheelus was placed on restriction for about six months prior to his court-martial, and at this time, has served close to four months of his confinement." In the closing paragraph, counsel stated: "Granting this request will award SGT Wheelus for his dedicated service and provide him the opportunity to care for his parents." The defense counsel attached to the submission a "Clemency Petition" from appellant, who requested

a reduction in sentence based upon "Consideration of time spent in pretrial restriction" and "Parents deteriorating physical condition and resulting financial problems." Appellant described the terms of his restriction and noted: "Throughout this 21 week period I regretted what I had done and worried about my parents and how they would be."

Neither defense counsel's submission nor appellant's clemency petition raised any issues concerning the legality of appellant's pretrial restriction; nor did they suggest that appellant was entitled, as a matter of law, to any additional credit for pretrial confinement. Moreover, appellant did not request, either personally or through counsel, that the staff judge advocate modify his recommendation to reflect the details of appellant's pretrial restriction.

On May 16, 1996, the staff judge advocate provided the convening authority with a short addendum to his recommendation. The addendum noted that the clemency submissions from defense counsel and appellant were enclosed; observed that "RCM 1107 requires you to consider the matters prior to taking action in the case"; and stated that the defense counsel "requests that you disapprove the confinement for thirty-six months" and that appellant "respectfully asks that you reduce the adjudged sentence." In the addendum, the staff judge advocate, without further comment, recommended that the adjudged sentenced be approved and that appellant receive 8 days confinement credit. The addendum made no reference to appellant's pretrial restriction. It did not take issue with any of the factual matters set forth in the defense submissions; nor did it address the substance of the defense clemency request.

The convening authority's initials appear on both the defense counsel's submission and appellant's clemency petition, indicating that he personally saw these documents. The convening authority took action on May 16, 1996, and while ordering the 8–day credit awarded by the military judge, he approved the adjudged sentence.

## I

The required content of the staff judge advocate's recommendation was greatly simplified by the Military Justice Act of 1983, Pub.L. No. 98–209, § 5(a)(1), 97 Stat. 1395–97 (1983). *See* Art. 60(d), UCMJ, 10 USC § 860(d); RCM 1106(d)(3); *cf. United States v. Hill,* 27 MJ 293, 294 (CMA 1988). Nevertheless, posttrial processing problems abound. *See United States v. Thompson,* 43 MJ 703, 707 (A.F.Ct.Crim.App.1995) (posttrial processing errors accounted for 44 percent of cases in which the Air Force court granted relief in FY 1995).

Posttrial processing errors fall into different categories. One area that has generated many cases is the insertion by the staff judge advocate of "new matter" into the addendum—without giving the defense an opportunity to respond. *E.g., United States v. Buler,* 46 MJ 467 (1997) (SJA's insertion of statement of how much pay accused would receive prior to effective date of adjudged forfeitures was not prejudicial); *United States v. Catalani,* 46 MJ 325 (1997) (SJA's countering of defense clemency submissions with assertion that "senior most military judge in the Pacific" who adjudged sentence had already taken these matters into consideration was prejudicial error); *United States v. Haney,* 45 MJ 447 (1996) (SJA's adverse characterization of a posttrial hearing and his assertion that a defense counsel under attack by accused "was not a counsel in the case" were "presumptively prejudicial"); *United States v. Jones,* 44 MJ 242 (1996) (SJA's inclusion of posttrial processing chronology and discussion of accused's ineligibility for a rehabilitation program, due to his minimal remaining sentence to confinement, was not prejudicial error); *United States v. Leal,* 44 MJ 235 (1996) (SJA's insertion of discussion of accused's prior reprimand was prejudicial).

Recently, in *United States v. Chatman,* 46 MJ 321 (1997), we reversed our policy of treating new matter as "presumptively prejudicial." Accordingly, we announced prospectively that

for all cases in which a petition for review is filed after the date of this decision asserting that defense counsel have not been

served with an addendum containing new matter, we will require appellant to demonstrate prejudice by stating what, if anything, would have been submitted to "deny, counter, or explain" the new matter.

*Id.* at 323.

Another area that continues to bedevil posttrial processing is lawyer problems. *E.g., United States v. Howard,* 47 MJ 104 (1997) (substitute defense counsel failed to establish attorney-client relationship before responding to SJA recommendation); *United States v. Washington,* 45 MJ 497 (1997) (wrong counsel served with recommendation); *United States v. Miller,* 45 MJ 149 (1996) (substitute defense counsel failed to contact client and establish attorney-client relationship before filing response to SJA recommendation); *United States v. Hickok,* 45 MJ 142 (1996) (defense counsel left service after trial, and no substitute counsel had been provided when SJA prepared recommendation and convening authority took action); *United States v. Edwards,* 45 MJ 114 (1996) (legal officer who prepared recommendation had preferred charges, interrogated accused, and acted as evidence custodian); *United States v. Moseley,* 35 MJ 481 (CMA 1992) (defense counsel not served with recommendation); *United States v. Rice,* 33 MJ 451 (CMA 1991) (government witness prepared recommendation).

At least with respect to cases involving the absence of defense counsel during posttrial proceedings, a majority of this Court agrees in principle that the error can be tested for prejudice and that the appellant has the burden of establishing what counsel "would have said in response to the SJA's recommendation." *Howard, supra* at 105, 107. In general, however, resolution of lawyer problems remains problematic.

A third category of posttrial processing cases involves error in the recommendation itself. *E.g., United States v. Drayton,* 40 MJ 447 (CMA 1994) (accused waived objection to SJA's erroneous reporting of findings; SJA's improper inclusion of testimony from pretrial investigation, to bolster sufficiency of evidence of guilt, was not prejudicial); *United States v. Diaz,* 40 MJ 335 (CMA 1994) (SJA's

misstatement of findings of guilty, omitting to mention several specifications, nullified convening authority's purported approval of those findings); *United States v. Demerse,* 37 MJ 488 (CMA 1993) (SJA's failure to note accused's Vietnam awards and decorations was "plain error"). Appellant's case falls into this general category.

It has long been asserted that an accused's best chance for posttrial clemency is the convening authority. *See United States v. Wilson,* 9 USCMA 223, 226, 26 CMR 3, 6 (1958); *cf. United States v. Massey,* 5 USCMA 514, 18 CMR 138 (1955). To what extent modern pretrial agreement practice has altered the quantum of posttrial clemency is unknown. In a pretrial agreement, an accused usually agrees to plead guilty, saving the Government the expense and effort of a contested trial, in exchange for the convening authority's agreement to approve no sentence greater than some stated maximum, which generally is considerably less than that authorized by law for the offenses (3 years *vice* 46 in the instant case). However, even assuming pretrial agreement practice has impacted the quantum of posttrial clemency, it is clear to us, based upon the cases we see, that posttrial clemency still plays a vital role in the military justice system—even where pretrial agreements have been struck.

But it is important to clarify *which* convening authority we are talking about by the time a case gets to us. Are we talking about the same convening authority who reviewed the initial investigative materials, as well as the Charges and specifications themselves; who considered the recommendations of appellant's immediate chain of command; who referred the Charges to a court-martial; and who entered into a pretrial agreement with the accused? That was a convening authority who knew something about the accused, as well as the circumstances and effects of the offense, and the related parties.

What about the officer who holds that position today? He may not have been there when the crime was committed and the case was tried. He may not know the parties, the victims, the intermediate commanders who

preferred and forwarded the Charges, or the staff judge advocate who advised on the case. He may not have a feel for the impact of the crime on the unit, the mission, and the community at the time. What, then, are the probabilities that such an officer, reviewing his predecessor's decision, will feel that he is in a position to make a more informed judgment than his predecessor? An officer such as this would not necessarily be an accused's best chance for clemency.[3]

The Manual for Courts–Martial, *supra*, seems to provide the logical solution, at RCM 1106(d)(6):

> In case of error in the recommendation ..., appropriate corrective action shall be taken by appellate authorities without returning the case for further action by a convening authority.

This procedural mechanism for remedying broken posttrial recommendations appears to be fully in accord with the President's authority under Article 36, UCMJ, 10 USC § 836, to make procedural rules for courts-martial.

In addition, it appears to be consistent—practically verbatim—with the contemplation of Congress back in 1983, when it abbreviated the staff judge advocate's recommendation and the scope of the convening authority's review:

> If the accused has any objections to the staff judge advocate's recommendations, those objections must be raised in the response; failure to do so constitutes a waiver of the objection to the staff judge advocate's recommendation and the effect of the recommendation on the convening authority's action. If there is an objection to an error that is deemed to be prejudicial under Article 59 [UCMJ, 10 USC § 859] during appellate review, it is the Committee's intent that *appropriate corrective action be taken by appellate authorities without returning the case for further action by a convening authority.*

S.Rep. No. 53, 98th Cong., 1st Sess. 21 (1983), U.S.Code Cong. & Admin.News 1982, pp. 2177, 2186–2187 (emphasis added).

Appellate courts, of course, do not have clemency powers *per se*, that being an Executive function reposed, in the first instance, in the convening authority. *See United States v. Healy*, 26 MJ 394 (CMA 1988). Still, the Courts of Criminal Appeals have broad power to moot claims of prejudice by "affirm[ing] only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Art. 66(c), UCMJ, 10 USC § 866(c) (1994).

*United States v. Cook*, 46 MJ 37 (1997), was an example of that process. There, an addendum to the recommendation contained "new matter," and the defense was not afforded an opportunity to respond. We sustained the decision of the Court of Criminal Appeals to order sentence reduction, rather than returning the record of trial to a convening authority for a new recommendation and action. We concluded that that court "properly exercised its discretion to fashion an appropriate remedy by affirming only that portion of the sentence that it found correct under the guidelines of Article 66(c)." 46 MJ at 40.

■ The applicable statutory and Manual provisions, as well as our prior cases, establish the following process for resolving claims of error connected with a convening authority's posttrial review. First, an appellant must allege the error at the Court of Criminal Appeals. Second, an appellant must allege prejudice as a result of the error. Third, an appellant must show what he would do to resolve the error if given such an opportunity.

■ If an appellant meets this threshold, then it is incumbent upon the Courts of

---

**3.** The suggestion in *United States v. Moseley*, 35 MJ 481 (CMA 1992), that, ordinarily, errors in posttrial processing should be returned to the convening authority for correction as soon as detected, would both have ensured that the intermediate appellate court had a complete record before it and, usually, would have gotten the record back to the same officer who originally took action in the case. However, the suggestion seems not to have gained much momentum, thus necessitating a new approach.

Criminal Appeals, given their plenary review authority under Article 66(c), as amplified by the guidance found in RCM 1106(d)(6), to remedy the error and provide meaningful relief. Because clemency is a highly discretionary Executive function, there is material prejudice to the substantial rights of an appellant if there is an error and the appellant "makes some colorable showing of possible prejudice." *See Chatman*, 46 MJ at 323–24. If the appellant makes such a showing, the Court of Criminal Appeals must either provide meaningful relief or return the case to the Judge Advocate General concerned for a remand to a convening authority for a new posttrial recommendation and action.

■ Lastly, there are those cases where an appellant has not been prejudiced, even though there is clearly an error in the posttrial proceedings. If that be the case, then the Courts of Criminal Appeals preferably should say so and articulate reasons why there is no prejudice.

■ After the entire process has been completed below, then and only then, absent some extraordinary circumstances, is a case ripe for review by this Court under our review powers expressed in Article 67, UCMJ, 10 USC § 867 (1994). Our role should be limited to reviewing decisions of the Courts of Criminal Appeals as a matter of law. Being so limited, we should not be involved in the minutiae of posttrial proceedings.

■ In the present case, the primary focus of appellant's clemency request concerned his responsibility for his parents' health and welfare. The fact of pretrial restriction was mentioned in the posttrial submissions, but appellant did not claim that it was illegal or that any confinement credit was warranted as a matter of law. Although the staff judge advocate's recommendation was deficient because it focused only on the 8 days of confinement credit ordered by the military judge, we note that the recommen-

dation did not affirmatively state that there was no other pretrial restraint. The question of whether the convening authority would have been misled is illuminated by the fact that appellant, in his subsequent submissions, did not request the staff judge advocate to modify the recommendation to reflect more completely all aspects of appellant's pretrial restraint. Instead, appellant was content to rely on his RCM 1105 submission and the clemency petition to set forth the details of his pretrial restraint. The staff judge advocate forwarded these materials to the convening authority without any dispute as to the accuracy of appellant's comments, and the staff judge advocate emphasized to the convening authority his duty to read the materials. The defense submissions bear the convening authority's initials.

Under these circumstances—where the issue was not central to appellant's posttrial submission; where there was no factual dispute generated by the posttrial submissions; where appellant did not ask the staff judge advocate to further clarify the matter; and where there is significant evidence that the convening authority read the matter submitted by appellant—we conclude that appellant has not made the requisite showing of prejudice.[4]

**II**

■ In the second granted issue, appellant contends that he was prejudicially hindered in the preparation of his clemency submissions before the convening authority because he was not timely served with a copy of the record of trial; "[n]or is there any evidence in the record of trial that that substitute service of the record was made upon appellant's counsel in accordance with RCM 1104(b)(1)(C)." Final Brief at 13. These allegations are insufficient, as a matter of law, to warrant relief.

In general, RCM 1104(b)(1)(A) requires the Government to "cause a copy of the record of trial to be served on the accused as soon as the record of trial is authenticated."

---

4. Thus, we need not speculate whether the convening authority, who had already granted appellant a very favorable pretrial agreement, might have been inclined to grant him further sentence relief, where the degree of restriction was the product of appellant's own additional misconduct.

Further, RCM 1104(b)(1)(B) requires the Government to attach the accused's receipt for the record (or trial counsel's certificate indicating that the record has been transmitted) to the record of trial. Substitute service of the record on trial defense counsel is permitted "[i]f it is impracticable to serve the record of trial on the accused because of the transfer of the accused to a distant place . . . or if the accused so requests. . . ." RCM 1104(b)(1)(C). The accused, then, has a minimum of 10 days for submission of clemency matters or for comment on the posttrial recommendation, after the latter of the receipt of the record of trial or the recommendation. RCM 1105(c)(1). Only then can the convening authority take action. RCM 1106(f)(5).

In the instant case, the record of trial and allied papers reflect that the military judge authenticated the record on March 21, 1996. The staff judge advocate's posttrial recommendation is dated April 10, 1996. Trial defense counsel's submission is dated May 7, 1996. It, along with appellant's undated submission and the staff judge advocate's addendum (dated May 16, 1996), were apparently forwarded to the convening authority on May 16, 1996—the day the convening authority took action.

Regarding service of matters on the defense, the record and allied papers reflect the following: (1) there is no indication that appellant elected to have trial defense counsel receive his copy of the record of trial; (2) there is no documentation that the Government elected substitute service of the record on trial defense counsel, in accordance with RCM 1104(b)(1)(C), *supra;* and (3) there is documentation of the sending of a copy of the record of trial to appellant, at Fort Sill, Oklahoma—but on June 8, 1996, some 3

weeks after the convening authority had taken action.

On the other hand, it appears that, at some point after the court-martial, appellant was transferred from Germany to Fort Sill, Oklahoma. Further, trial defense counsel, an attorney certified to appear before courts-martial in accordance with Article 27(b), UCMJ, 10 USC § 827(b), *did* submit posttrial matters to the convening authority wherein he *did not* protest that he had not received a copy of the record of trial. In addition, there is no averment before this Court that trial defense counsel did not, in fact, receive substitute service of the record of trial in a timely manner.[5] Without further defense assertion, it appears that the essence of appellant's complaint is merely that the record of trial does not adequately document substitute service of the record on trial defense counsel.

We agree that the Government's documentation here has been woefully inadequate. Further, we acknowledge that an insufficiency of documentation can, as here, have a substantial impact—particularly in terms of waste of time and unnecessary cost of appeal. The defense, however, is the moving party, and it must at least aver grounds sufficient to warrant relief. Without more than has been advanced here, no case for prejudice has been made out.[6] See Art. 59(a). The assignment of error is without merit.

The decision of the United States Army Court Criminal Appeals is affirmed.

Judges CRAWFORD, GIERKE, and EFFRON concur.

5. Similarly, appellant, in his clemency submission, did not complain that the defense had not been provided a copy of the record of trial. Appellant had executed a "POST–TRIAL AND APPELLATE RIGHTS" form in which his rights with respect to provision of the record of trial and posttrial recommendation were explained. After sentence was adjudged at the court-martial, appellant acknowledged to the military judge that he had signed and understood these rights.

6. Before this Court, moreover, appellant suggests nothing of apparent consequence that might have

been mentioned to the convening authority that was not already well articulated in the combined submissions to the convening authority by appellant and trial defense counsel. In any event, all of the matters of a clemency nature that were in the record of trial were there because they were put there by the defense and seem to be peculiarly within the knowledge of the defense. It does not appear, for example, that the defense was dependent upon the record of trial to obtain information about the medical condition of appellant's parents.

SULLIVAN, Judge (dissenting):

My Brother, writing for the majority, calls this case "another case involving alleged insufficiencies in the posttrial review process." 49 MJ at 284. However, to Sergeant Wheelus, this is not just another case; it is his real case. Moreover, here there was clear legal error in his post-trial review process and that error robbed him of a good chance to get some clemency relief from the convening authority.

The error is simple to see and easy to understand. The record shows from August 7, 1995, until January 17, 1996, appellant suffered varying levels of pretrial restraint. This restraint included limitations on appellant's freedom of movement and association, as well as placing limits on appellant's normal military duties. RCM 1106(d)(3)(D) clearly requires the staff judge advocate's recommendation to have "[a] statement of the nature and duration of any pretrial restraint." This was not done in this case. Therefore, there was error.

As to the prejudice, although the defense may have raised this restraint in their clemency submission, the staff judge advocate, the convening authority's primary advisor on clemency, remained silent. He did so in this case where there was almost 6 months' pretrial restraint and the confinement adjudged was 36 months. Thus, the fact that the sole advisor to the convening authority on clemency, in violation of an express RCM provision, failed to give key information to the convening authority, sufficiently raised the question of prejudice, at least enough to require a remand to the court below for a determination of prejudice. *See United States v. Chatman,* 46 MJ 321, 324 (1997).

In my view, we cannot affirm this now since the record shows that the court below not only did not determine prejudice but failed to find error, which even the majority admits occurred. Accordingly, I think a fair resolution of this case requires a remand to the court below with its special factfinding power for a review of the prejudice of the error they failed to find.