**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Staff Sergeant SAUL M. BOOKMAN**
**United States Air Force**

**ACM 38342**

**31 March 2014**

Sentence adjudged 22 January 2013 by GCM convened at Buckley Air Force Base, Colorado. Military Judge: Christopher M. Schumann (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 8 months, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Isaac C. Kennen.

Appellate Counsel for the United States: Colonel Don M. Christensen; Major Jason M. Kellhofer; and Gerald R. Bruce, Esquire.

Before

ROAN, HELGET, and WEBER
Appellate Military Judges

This opinion is subject to editorial correction before final release.

PER CURIAM:

A general court-martial composed of a military judge sitting alone convicted the appellant, in accordance with his pleas, of nine specifications of larceny, in violation of Article 121, UCMJ, 10 U.S.C. § 921. The court sentenced the appellant to a bad-conduct discharge, confinement for 8 months, and reduction to E-1. With the exception of deferring and waiving the mandatory forfeitures, the convening authority approved the adjudged sentence.

Before this Court, the appellant raises three assignments of error: (1) Whether the staff judge advocate's recommendation (SJAR) contained plain and prejudicial error because it inaccurately stated that the appellant "was convicted of having committed

60 different thefts over the course of a single year" and the appellant "pleaded guilty to stealing more than $30,500," when the appellant actually was convicted of, and pled guilty to, committing only 41 thefts for a total amount of $15,797; (2) Whether Specifications 2 and 4, 6 and 7, and 8 and 9 of the Charge are multiplicious; and (3) Whether the sentence in this case is inappropriately severe. Finding no error that materially prejudices a substantial right of the appellant, we affirm.

*Background*

In 2010, the appellant was assigned to the 320th Training Squadron (320 TRS) at Lackland Air Force Base, Texas. While assigned there, he was also the President of the 320th TRS Booster Club, which was a private organization. As the President of the Booster Club, the appellant exercised control over the Booster Club's finances; had access to the Booster Club debit card, checking account, and bank records; and managed the Booster Club ledger for recording its transactions. The appellant was authorized to make deposits and payments on behalf of the Booster Club.

From approximately 5 April 2010 to 31 December 2010, on 41 separate occasions, the appellant stole almost $15,800 from the 320th TRS Booster Club. In April 2010, while on leave in Massachusetts, the appellant used the Booster Club debit card to withdraw $302 cash from a local Automatic Teller Machine (ATM) to pay a friend for baseball tickets. From 14 July 2010 to 5 August 2010, the appellant was on leave in Arizona and Nevada. During this period, he used the debit card to make several cash withdrawals from various ATMs. He used the money for his own personal use and enjoyment, such as playing golf, paying for hotels, food and gas, and paying for gambling at casinos in Las Vegas.

From 5 November 2010 to 29 November 2010, the appellant used the Booster Club debit card to purchase an airline ticket for a friend to accompany him to Arizona and to withdraw cash for his own personal use. The appellant also used the Booster Club checking account to write himself a check in the amount of $1,000. He annotated on the check that it was for a charitable donation to the Fisher House, but instead he deposited the check in his personal bank account to use for an upcoming trip to Arizona.

From 1 December 2010 to 29 December 2010, the appellant used the Booster Club debit card to make numerous cash withdrawals for his own personal use, to include purchasing a suit for the squadron Christmas party, purchasing Christmas presents, and purchasing tickets to a college bowl game.

To conceal his misconduct from the Booster Club, the appellant falsified the Booster Club ledger by entering what appeared to be legitimate transactions.

ACM 38342

*Post-Trial Processing*

On 10 April 2013, the staff judge advocate (SJA) signed the Addendum to the SJAR. In paragraph 4, the SJA erroneously stated:

> [The appellant] was convicted of having committed *60* different thefts over the course of a single year, while he was the president of his former squadron's booster club. . . . In total, [the appellant] pleaded guilty to stealing more than *$30,500* (Record of Trial, Volume 3, Prosecution Exhibit 1), which he used for his own personal benefit, to include personal purchases and funding trips to Las Vegas, Nevada.

(emphasis added).

According to the stipulation of fact in this case, the parties agreed the appellant committed only 41 thefts for a total amount of $15,797. Furthermore, in sentencing, the trial counsel argued the same number of thefts and total amount stolen consistent with the stipulation of fact. On appeal, the appellant asserts that as a result of the error in the SJAR Addendum, we should reassess his sentence and decline to affirm the bad-conduct discharge.

To obtain relief based on an error in the SJAR or its Addendum, the appellant must: (1) allege the error at the Court of Criminal Appeals; (2) allege prejudice resulting from the error; and (3) show what he would do to resolve the error if given the opportunity. *See United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F. 1998). Considering the highly discretionary nature of the convening authority's action, "there is material prejudice to the substantial rights of an appellant if there is an error and the appellant 'makes some colorable showing of possible prejudice.'" *Id.* at 289 (quoting *United States v. Chatman*, 46 M.J. 321, 323-24) (C.A.A.F. 1997)). "If the appellant makes such a showing, the Court of Criminal Appeals must either provide meaningful relief or return the case to the Judge Advocate General concerned for a remand to a convening authority for a new posttrial recommendation and action." *Id.*

Pursuant to Rule for Courts-Martial 1106(d)(6), "[i]n case of error in the recommendation . . . appropriate corrective action shall be taken by appellate authorities without returning the case for further action by a convening authority."

In his clemency request, the appellant requested the convening authority reduce his confinement by two months and enter him into the Return to Duty Program (RTDP). In support of his request, the appellant submitted a recommendation from the military judge, his commander who preferred the charge in this case, plus eight other letters.

On appeal, the appellant asserts he was materially prejudiced by the errors in the SJAR Addendum because they grossly exaggerated his culpability, thereby hindering the multiple recommendations that he be entered into the RTDP. The appellant claims the only meaningful relief is for this Court not to affirm his punitive discharge. We disagree.

Despite the errors in the SJAR Addendum, there is significant aggravation evidence in this case. The 41 thefts occurred over a one-year period; the appellant was the President of the 320th Booster Club and intentionally concealed the thefts in the Booster Club ledger, including falsely claiming some of the money had been used for a charitable donation; and the appellant used the stolen funds for his personal use, to include funding trips to Las Vegas, Nevada. Additionally, the appellant underwent a psycho-social evaluation as required for the RTDP application, and the evaluating provider, Dr. DB, recommended against the appellant's admission into the RTDP.

After considering the entire record of trial, we find the appellant has not made a colorable showing of possible prejudice. We are convinced the convening authority would have taken the same action had he been advised of the correct number of thefts and total amount stolen by the appellant.

*Multiplicity*

For the first time on appeal, the appellant asserts that Specifications 2 and 4, 6 and 7, and 8 and 9 of the Charge are multiplicious.

This Court reviews multiplicity issues de novo. *See United States v. Anderson*, 68 M.J. 378, 385 (C.A.A.F. 2010). Multiplicity in violation of the Double Jeopardy Clause of the Constitution[1] occurs when "'a court, contrary to the intent of Congress, imposes multiple convictions and punishments under different statutes for the same act or course of conduct.'" *Id.* (quoting *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006)) (emphasis omitted). Accordingly, an accused may not be convicted and punished for two offenses where one is necessarily included in the other, absent congressional intent to permit separate punishments. *See United States v. Teters*, 37 M.J. 370, 376 (C.M.A. 1993). Where legislative intent is not expressed in the statute or its legislative history, "it can also be presumed or inferred based on the elements of the violated statutes and their relationship to each other. *Id.* at 376-77. The Supreme Court laid out a "separate elements test" for analyzing multiplicity issues: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Accordingly, multiple convictions and punishments are permitted for a distinct act if the two charges each have at least one

---

[1] U.S. CONST. amend. V.

separate statutory element from each other. Absent a timely motion at trial, an unconditional guilty plea waives a multiplicity claim on appeal absent plain error. *See United States v. Hudson*, 59 M.J. 357, 358 (C.A.A.F. 2004), *overruled in part on other grounds by United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010).

Article 121, UCMJ, Larceny, contains the following elements:

(a) That the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person;

(b) That the property belonged to a certain person;

(c) That the property was of a certain value, or of some value; and

(d) That the taking, obtaining, or withholding by the accused was with the intent permanently to deprive or defraud another person of the use and benefit of the property or permanently to appropriate the property for the use of the accused or for any person other than the owner.

*Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 46.b.(1) (2012 ed.).

In this case, all of the transactions are specifically described in detail in the stipulation of fact. The main difference between Specifications 2 and 4, 6 and 7, and 8 and 9 is that Specifications 2, 6 and 8 allege the theft of cash in an amount "equal to or less than $500," while Specifications 4, 7 and 9 allege the theft of cash "of a value of more than $500. This is due to the maximum punishment allowed. For larceny of non-military property of a value of $500 or less, the maximum punishment is a bad-conduct discharge, forfeiture of all pay and allowances, and confinement for 6 months. For larceny of non-military property of a value of more than $500, the maximum authorized punishment is a dishonorable discharge, forfeiture of all pay and allowances, and confinement for 5 years. *MCM*, Part IV, ¶ 46.e.(1)(b), (d).

We find under the circumstances of this case, the said specifications are not multiplicious. All of these specifications involve more than one theft that occurred on divers occasions and the alleged timeframe for each specification is different. For Specifications 2 and 4, the larcenies under Specification 2 occurred on separate dates, at separate locations, and for different amounts than the larcenies that occurred under Specification 4. For Specifications 6 and 7, the larcenies under Specification 6 occurred on different dates and for different amounts than the larcenies under Specification 7. For Specifications 8 and 9, most of the larcenies under Specification 8 occurred on different dates and for different amounts than the larcenies under Specification 9. Specifications 8 and 9 each allege that a larceny occurred on 15 December 2010, however, the amounts and locations are different.

Accordingly, the appellant has failed to show that the specifications were multiplicious, and no error, plain or otherwise, occurred in this case.

*Sentence Severity*

The appellant asserts his sentence consisting of a bad-conduct discharge and confinement for eight months is inappropriately severe. We disagree.

This Court reviews sentence appropriateness de novo. *See United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only . . . the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial. *See United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007). We have a great deal of discretion in determining whether a particular sentence is appropriate, but are not authorized to engage in exercises of clemency. *See United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010); *United States v. Healy*, 26 M.J. 394, 395-96 (C.M.A. 1988).

The appellant argues that the adjudged and approved sentence shows the impact of the alleged multiplication of charges and errors in the SJAR, and the failure to consider the appellant's lack of any prior offenses, his outstanding duty performance, his combat service, and the fact he pled guilty.

The maximum punishment in this case was a dishonorable discharge, confinement for 18 years, forfeiture of all pay and allowances, and reduction to E-1. A pretrial agreement entered into between the parties capped confinement at 20 months. During its sentencing argument, the Government argued for a dishonorable discharge and confinement for 24 months. In response, the trial defense counsel recommended confinement for 8 months and, in exchange for no additional confinement, a bad-conduct discharge. During his argument, trial defense counsel also highlighted the appellant's strong duty performance, his rehabilitative potential, and his guilty plea. The military judge must have considered these matters because he concurred with the trial defense counsel's recommendation and sentenced the appellant to a bad-conduct discharge and confinement for 8 months. Additionally, the military judge submitted a post-trial recommendation for the appellant to be offered an opportunity to participate in the RTDP, which indicates he considered the appellant's mitigating factors. The military judge stated, "While I obviously recognize the serious nature of the misconduct [the appellant] pled guilty to, his plea of guilty coupled with his sincere expression of

remorse and the absence of any other misconduct in an otherwise commendable career warrants an opportunity for participation in the program."[2]

We have examined the entire record of trial and all of the circumstances in this case and find that the appellant's approved sentence correctly reflects the gravity of the 41 larcenies he committed and is not inappropriately severe.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.  Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).  Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

LAQUITTA J. SMITH
Appellate Paralegal Specialist

---

[2] After announcing the sentence, the military judge also recommended the convening authority waive mandatory forfeitures to be paid to the appellant's dependents.