# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

---

**No. ACM 40392 (rem)**

---

**UNITED STATES**
*Appellee*

**v.**

**Isaac J. SERJAK**
Airman First Class (E-3), U.S. Air Force, *Appellant*

---

On Remand from
the United States Court of Appeals for the Armed Forces

Decided 11 May 2026

---

*Military Judge*: Lance R. Smith.

*Sentence*: Sentence adjudged 29 July 2022 by GCM convened at Royal Air Force Mildenhall, United Kingdom. Sentence entered by military judge on 22 August 2022: Dishonorable discharge, confinement for 54 months and 100 days, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Major Spencer R. Nelson, USAF; Frank J. Spinner, Esquire.

*For Appellee*: Colonel Matthew D. Talcott, USAF; Lieutenant Colonel J. Pete Ferrell, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before DOUGLAS, MCCALL, and KUBLER, *Appellate Military Judges*.

Senior Judge DOUGLAS delivered the opinion of the court, in which Judge MCCALL and Judge KUBLER joined.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

DOUGLAS, Senior Judge:

Appellant's case is before this court for a second time. Contrary to his pleas, a general court-martial composed of officer and enlisted members found Appellant guilty of one specification of sexual assault upon JM and one specification of abusive sexual contact upon HC in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920; one specification of assault consummated by a battery upon BH in violation of Article 128, UCMJ, 10 U.S.C. § 928; and one specification of making a false official statement about JM in violation of Article 107, UCMJ, 10 U.S.C. § 907.[1,2] The trial judge sentenced Appellant to a dishonorable discharge, confinement for 54 months and 100 days, forfeiture of all pay and allowances, and reduction to the grade of E-1.[3] The convening authority took no action on the findings or the sentence. Pursuant to Appellant's request, the convening authority waived the automatic forfeitures for a period of six months, and directed the total pay and allowances be paid to Appellant's spouse for the benefit of her and their dependent child.

In his initial appeal to this court, Appellant raised eight assignments of error, which we reworded, whether: (1) he was selectively prosecuted; (2) any taint from undue command influence (UCI) was overcome; (3) a speedy trial violation occurred; (4) his convictions are legally and factually sufficient; (5) Articles 120(b)(2) and (g)(7), UCMJ, 10 U.S.C. §§ 920(b)(2), (g)(7), are unconstitutionally vague; (6) as applied to him, Articles 120(b)(2) and (g)(7), UCMJ, provided fair notice; (7) he was provided five days to rebut Rule for Courts-Martial (R.C.M.) 1106A victim matters; and (8) 18 U.S.C. § 922 is constitutional as applied in Appellant's case. We also considered one additional issue not raised by Appellant but identified during this court's Article 66(d), UCMJ, 10 U.S.C. § 866(d), review: (9) whether we could reliably reassess Appellant's sentence. *See United States v. Serjak*, No. ACM 40392, 2024 CCA LEXIS 524, at *3–4 (A.F. Ct. Crim. App. 11 Dec. 2024) (unpub. op.).

In our 11 December 2024 opinion, we found no prejudicial error as to issues (1)–(3). *Id.* at *3. Issues (5) and (8) were resolved without discussion or relief. *Id.* (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)). As to issue (4), we determined Appellant's convictions for abusive sexual contact upon HC

---

[1] All references in this opinion to the UCMJ and Rules for Courts-Martial (R.C.M) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Consistent with his pleas, the same general court-martial found Appellant not guilty of one specification of abusive sexual contact in violation of Article 120, UCMJ, and two specifications of assault consummated by a battery in violation of Article 128, UCMJ.

[3] Appellant was credited with 43 days of pretrial confinement.

in violation of Article 120, UCMJ, assault consummated by a battery upon BH in violation of Article 128, UCMJ, and making a false official statement about JM in violation of Article 107, UCMJ, were all legally and factually sufficient. However, we found Appellant's conviction for sexual assault upon JM in violation of Article 120, UCMJ (Specification 3 of Charge II), was factually insufficient, relying upon our superior court's decision in *United States v. Mendoza*, 85 M.J. 213 (C.A.A.F. 2024), thus resolving without determining issue (6). *Id.* at *4. We therefore set aside the finding of guilty to Specification 3 of Charge II and dismissed with prejudice. We authorized a rehearing on the sentence. As a result, issue (7) was mooted.

Major General Rebecca R. Vernon, performing the duties of The Judge Advocate General, certified the following question to our superior court, the United States Court of Appeals for the Armed Forces (CAAF): "Whether the Air Force Court of Criminal Appeals erred in applying *United States v.* Mendoza [85 M.J. 213 (C.A.A.F. 2024)] to find Appellee's sexual assault conviction factually insufficient." *United States v. Serjak*, 85 M.J. 407 (C.A.A.F. 2025). The CAAF answered in the affirmative, and remanded "for a new review of the factual sufficiency of the evidence, consistent with [their *Serjak*] opinion, and to consider any other issues previously raised by Appellee before [our] court that were mooted by [our] prior decision." *United States v. Serjak*, 86 M.J. 319, No. 25-0120, 2026 CAAF LEXIS 74, at *9 (C.A.A.F. 23 Jan. 2026).

Upon remand to this court, we reevaluate the factual sufficiency of Appellant's sexual assault upon JM. We also resolve issue (7), whether Appellant received his allotted rebuttal time to submitted post-trial victim matters. We further modify the sentence to effectuate the convening authority's apparent intent of waiving forfeitures of pay and allowances for six months for the benefit of Appellant's family. Otherwise, we find no error materially prejudiced Appellant's substantial rights.

## I. DISCUSSION

### A. Sexual Assault upon JM

The CAAF determined Appellant's conviction for sexual assault of JM in violation of Article 120, UCMJ, was legally sufficient. *Serjak*, 2026 CAAF LEXIS 74, at *8−9. Pursuant to their remand, and additional guidance, we reevaluate whether Appellant's conviction for sexual assault of JM is factually sufficient.

**1. Background**

We explained the facts underlying Appellant's conviction of sexual assault of JM in our previous opinion and we condense the pertinent facts here. *See Serjak*, unpub. op. at \*4–14 (for complete background).

Appellant, who had just been issued a "no contact order" for two other named individuals by his first sergeant, contacted the same first sergeant on 21 February 2021, and said words to the effect of, "I need to get ahead of something." After the first sergeant heard Appellant's explanation for his telephone call, the first sergeant called the installation Sexual Assault Response Coordinator (SARC) and the Air Force Office of Special Investigations (OSI) on-call agent and set up appointments for Appellant. After meeting with the SARC on this same day, Appellant agreed to be evaluated by a sexual assault nurse examiner.

Appellant explained to the nurse examiner that on 19 February 2021, he was a designated driver for a group of people, including a person he identified as "Tilly" (later identified as JM). After the evening's parties, Appellant and the group returned to their dorms. JM walked past Appellant's dorm room and Appellant invited her in. He offered her "Tylenol and water." Appellant explained that after they both fell asleep in his bed, JM woke up, undressed herself, and "started making sexual advances," which Appellant said made him feel "uncomfortable." He claimed he told JM, "No, I do not want to have sex with you" and that it was a "bad idea." According to Appellant, JM responded that she was "sober," and then "kissed" him, and then she "started getting on top" of him. Appellant further explained, "Reluctantly, we proceeded to have sex. Every time I tried to move away [JM] wrapped her legs around me." Appellant added that "a few times she dug her nails" into him and when they "were done" having sex, JM "got up and had a shower." Appellant explained he gave JM some clothes and they both fell asleep again, but when he awoke, "she was gone." After Appellant's forensic exam, he requested a victims' counsel and declined interviews by OSI.

JM was interviewed by OSI first as a subject due to Appellant's statements to the nurse examiner. Upon rights advisement, JM agreed to be interviewed and she explained to OSI that she had very little memory of what occurred between her and Appellant on the night in question.[4] While at a party on 19 February 2021, she consumed between five and eight "red solo cups" of whiskey mixed with cola and an unknown quantity of "shots." She confirmed Appellant

---

[4] At trial, JM maintained she had no memory of Appellant and her having sex on the night in issue.

was a designated driver for herself and two others, but she had not previously met him or known him, and she was not a member of Appellant's squadron.

JM explained she was already at this first party when her female friend, AC, arrived with Appellant and another Airman. AC had arranged for Appellant to be their designated driver after the party. JM noticed Appellant was staring at her during the party, but he did not talk to her. She did not approach him. Instead, she stayed next to her friend AC. After the party, JM and AC were in the backseat of Appellant's vehicle while he drove them to a second party; they were kissing each other. After leaving the first party, according to AC, Appellant drove the group to get food, more alcohol, and then they went to a second party. At this second party, JM and others shared a bottle of gin mixed with juice.

At the end of the evening, JM recalled walking past Appellant's room on the way to her own, when Appellant called out to her, "[C]ome here." He "ushered" her into his room and told her to sit on his bed. She remembered that Appellant told her how "kissing [AC] was not the type of person [she] was," and JM remembered getting upset because she felt like Appellant was telling her who she was as a person. Appellant told her to "calm down, lay over, and just go to sleep." Appellant pushed her onto her left side. JM laid her head down and fell asleep. Later, she woke up in the same position but was wearing Appellant's sweatshirt with the hood drawn over her hair and tied under her chin. Her hair was "completely soaked" and she was otherwise naked. She was scared. She saw her phone in front of her. She used it to look behind her. She saw Appellant.

JM got up to leave the bed, and Appellant grabbed her arm at the elbow. She told him she was just getting up to go to the bathroom. She went to Appellant's bathroom and locked the door. She recalled having a tampon in her the night before, so she "checked to see if it was still there, and it was pushed very, very far up inside of [her]." She pulled it out and flushed it down the toilet. After leaving the bathroom, she noticed the bedroom was "destroyed." Her "clothes were everywhere, all over the floor." The desk chair he had been sitting on "was broken;" the seat of the chair was "broken down." JM collected her belongings, dressed, and left.

### 2. Law

We review questions of factual sufficiency when an appellant asserts an assignment of error and shows a specific deficiency in proof. *United States v. Harvey*, 85 M.J. 127, 129 (C.A.A.F. 2024) (citing Article 66(d)(1)(B)(i), UCMJ, 10 U.S.C. § 866(d)(1)(B)(i)).

Article 66(d)(1), UCMJ, provides:

(B) FACTUAL SUFFICIENCY REVIEW.

> (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.
>
> (ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—
>
>> (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and
>>
>> (II) appropriate deference to findings of fact entered into the record by the military judge.
>
> (iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1), *Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*).

The requirement of "appropriate deference" when a Court of Criminal Appeals (CCA) weighs the evidence and determines controverted questions of fact "depend[s] on the nature of the evidence at issue." *Harvey*, 85 M.J. at 130. This court has discretion to determine what level of deference is appropriate. *Id.* at 131. "[T]he quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is proof beyond a reasonable doubt, the same as the quantum of proof necessary to find an accused guilty at trial." *Id.* (internal quotation marks omitted).

In order to convict Appellant of sexual assault of JM as charged in this case, the Government was required to prove that: (1) Appellant committed a sexual act upon JM by penetrating her vulva with his penis; and (2) the sexual act was without her consent. *See* 10 U.S.C. § 920(b)(2)(A); *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 60.b.(2)(d)(i)–(ii). "The term 'sexual act' means . . . the penetration, however slight, of the penis into the vulva . . . ." *MCM*, pt. IV, ¶ 60.a.(g)(1)(A).

Our superior court has held that when charging sexual assault without consent, this theory "criminalizes the performance of a sexual act upon a victim who is capable of consenting but does not consent." *United States v. Mendoza*, 85 M.J. 213, 220 (C.A.A.F. 2024). There are "three legal principles that may resolve disputes about the legal and factual sufficiency of evidence to prove the

'without . . . consent' element." *Serjak*, 2026 CAAF LEXIS 74, at \*6−7. The second legal principle, which is the only one that applies here, is identified as:

> If a rational trier of fact could find from the evidence *both* that the victim did not consent before falling asleep *and* that the sexual act subsequently occurred while the victim was asleep, the evidence is legally sufficient to prove the "without . . . consent" element of Article 120(b)(2)(A), UCMJ.

*Id.* at \*7 (omission in original) (citing *United States v. Moore*, 86 M.J. 308, No. 25-0110, 2026 CAAF LEXIS 73, at \*10 (C.A.A.F. 23 Jan. 2026)). This "second" legal principle logically flows from the definition of consent found in Article 120(g)(7)(B), UCMJ, which sets forth, "[a] sleeping, unconscious, or incompetent person cannot consent." *Moore*, 2026 CAAF LEXIS 73, at \*10. "Put simply, if a victim did not consent to a sexual act before falling asleep, and the victim later could not consent to a sexual act while asleep, then a sexual act occurring while the victim is asleep is 'without . . . consent.'" *Id.* (omission in original) (emphasis omitted).

### 3. Analysis

The CAAF determined Appellant's conviction for sexual assault of JM in violation of Article 120, UCMJ, was legally sufficient, applying the second legal principle identified in *Moore*, holding that a rational trier of fact "could have found that [JM] did not give consent to a sexual act or became too intoxicated to consent because [JM] testified that she did not consent," and could have also found the sexual act by Appellant occurred while JM "was either asleep or too intoxicated to reverse course and give consent." *Serjak*, 2026 CAAF LEXIS 74, at \*8−9 (emphasis omitted). Further, the CAAF recognized that "even if the evidence is legally sufficient to prove the 'without . . . consent' element of Article 120(b)(2)(A), UCMJ, a CCA still might find the evidence to be factually insufficient." *Id.* at \*9 (omission in original).

Turning to our review of the factual sufficiency of this conviction, Appellant made a request for a factual sufficiency review and asserted a specific deficiency of proof that the Government failed to prove he penetrated JM without her consent. Appellant's claim of deficiency is sufficiently specific for our analysis. *See Serjak*, unpub. op. at \*44–45.

Appellant explained to an experienced sexual assault nurse examiner that he had had sexual intercourse with JM. Appellant indicated that JM was alert and initiated the sexual intercourse. Again, we find this version of events inconsistent with the remainder of the evidence before us. Prior to falling asleep, JM had demonstrated no romantic or sexual interest in having sex with Appellant. Upon awakening, and finding herself to be in bed with Appellant, naked from the waist down, she went to the bathroom and physically searched

for a tampon she recalled having inserted in herself. She found it, far up inside of her. She flushed it in the toilet and left Appellant's bedroom. Although she had no memory of having sexual intercourse with Appellant, the evidence admitted at trial demonstrates sexual intercourse took place. We find the first element of the offense, that Appellant committed a sexual act upon JM by penetrating her vulva with his penis, occurred as charged.

The question of Appellant's criminality rests with whether JM consented to the sexual act. Applying the second legal principle identified in *Moore*, and restated by the CAAF in *Serjak*, which logically flows from the definition of consent found in Article 120(g)(7)(B), UCMJ, setting forth, "[a] sleeping, unconscious, or incompetent person cannot consent," we find JM did not consent to Appellant's sexual act. Prior to falling asleep JM did not consent to penetrative sex with Appellant. JM testified she was "pretty under the influence," clothed, and would not consent to Appellant's sexual act prior to falling asleep. JM and AC testified that JM drank a large amount of alcohol throughout the evening of 19 February 2021 and did not engage with Appellant. JM testified she did not talk to Appellant until entering his room at the end of the evening. As she recalled, when she did speak with Appellant, he irritated her by suggesting kissing another female was not "who she was" as a person. JM testified she had no memory of sexual intercourse, and there was no evidence, outside of Appellant's self-serving statements to his first sergeant and to a nurse examiner, that she awoke during Appellant's sexual act. When she did wake up, JM was scared, had wet hair for a reason unknown to her, and was wearing Appellant's sweatshirt, but naked from the waist down. She had no memories of any interactions at all with Appellant after falling asleep in his bed, in his room. We find Appellant's sexual act occurred while JM remained asleep. Therefore, the evidence reflects *both* that JM did not consent before falling asleep *and* that the sexual act subsequently occurred while she was asleep.

After weighing all the evidence and having given appropriate deference to the fact that the trial court saw and heard the witnesses, we are convinced that the finding of guilty was not against the weight of the evidence as to Specification 3 of Charge II. Thus, the finding of guilty to Specification 3 of Charge II is factually sufficient. *See* Article 66(d)(1)(B)(i)–(ii), UCMJ (2024 *MCM*).

**B. Rebuttal to R.C.M. 1106A Matters**

The convening authority's decision on action was signed on 19 August 2022.[5] Appellant's trial defense counsel acknowledged receipt of BH's matters

---

[5] The convening authority signed two Decision on Action Memorandums, both of which are contained in the record. His first decision was signed on 12 August 2022; the second decision was signed on 19 August 2022. The second decision replaced the first.

on 30 August 2022. Appellant claims on appeal that he was not provided these matters and did not have a chance to respond before the convening authority made his decision on action, as evidenced by the date his trial defense counsel acknowledged receipt, 30 August 2022.[6] Appellant claims prejudice and requests this court provide relief by disapproving two months confinement.

### 1. Additional Background

Appellant submitted his request for clemency timely, on 5 August 2022. Of the three named victims, only BH submitted post-trial matters. Her statement was submitted on 8 August 2022. In her matters, she requested the convening authority "not grant [Appellant] any leniency towards his sentence," and explained that during Appellant's court-martial, he "had no remorse at all." Further, she provided that during Appellant's unsworn statement, he did not take responsibility for his actions and did not offer an apology. In his decision on action, the convening authority denied Appellant's requests for deferment of the reduction in grade and deferment of automatic forfeitures. The convening authority explained that, in part, he denied these requests due to the "nature of the offenses and their effect on the [v]ictims."

On 22 May 2024, this court ordered the Government to explain why the record should not be remanded for new post-trial processing. On 4 June 2024, the Government answered the court's order to show cause, and filed a motion to attach, with responsive declarations and other attachments. We granted the motion to attach on 11 June 2024 and consider the attachments now to help us resolve Appellant's concern.[7]

### 2. Law

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Valentin-Andino*, 83 M.J. 537, 541 (A.F. Ct. Crim. App. 2023).

"In a case with a crime victim, after a sentence is announced in a court-martial any crime victim of an offense may submit matters to the convening authority for consideration in the exercise of the convening authority's powers under R.C.M. 1109 or 1110." R.C.M. 1106A(a). "The convening authority shall

---

[6] On 22 May 2024, we granted Appellant's unopposed motion to attach his post-trial declaration, dated 13 May 2024, relating to whether he was given an opportunity to respond to R.C.M. 1106A matters prior to the convening authority's decision on action in his case and we agreed to consider it. *See United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020).

[7] *See United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020).

ensure any matters submitted by a crime victim under this subsection be provided to the accused as soon as practicable." R.C.M. 1106A(c)(3).

If a crime victim submits matters under R.C.M. 1106A, "the accused shall have five days from receipt of those matters to submit any matters in rebuttal" to the convening authority. R.C.M. 1106(d)(3). "Before taking or declining to take any action on the sentence under this rule, the convening authority shall consider matters timely submitted under R.C.M. 1106 and 1106A, if any, by the accused and any crime victim." R.C.M. 1109(d)(3)(A).[8]

A convening authority "may not consider matters adverse to the accused without providing the accused an opportunity to respond." R.C.M. 1106A(c)(2)(B), Discussion. Additionally, "[t]he convening authority may not consider matters adverse to the accused that were not admitted at the court-martial, with knowledge of which the accused is not chargeable, unless the accused is first notified and given an opportunity to rebut." R.C.M. 1109(d)(3)(C)(i).

Where an appellant had not been provided an opportunity for rebuttal of matters provided to the convening authority, for relief on appeal we require an appellant to demonstrate prejudice. *See Valentin-Andino*, 83 M.J. at 543. "'[W]e will not speculate on what the convening authority might have done' if defense counsel had been given an opportunity to comment." *Id.* at 542 (quoting *United States v. Chatman*, 46 M.J. 321, 323–24 (C.A.A.F. 1997)). Further, an appellant must show what he would do to resolve the error if given such an opportunity. *United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F. 1998). "If the appellant makes such a showing, the Court of Criminal Appeals must either provide meaningful relief or return the case to the Judge Advocate General concerned for a remand to a convening authority for a new post-trial . . . action." *Id.* at 289.[9] A convening authority has authority to reduce a term of confinement that is six months or less, pursuant to Article 60a(b)(2), UCMJ, 10 U.S.C. § 860a(b)(2).

---

[8] R.C.M. 1109(d) has an apparent scrivener's codification error because it includes two paragraphs designated as paragraph "(3)." The first paragraph (3) addresses the convening authority's *Consideration of matters*, while the second paragraph (3) addresses the *Timing* of the convening authority's action. All references in this opinion are to the first paragraph (d)(3) in R.C.M. 1109.

[9] Although the CAAF was interpreting a different version of Article 60, UCMJ, 10 U.S.C. § 860, in *United States v. Scalo*, 60 M.J. 435 (C.A.A.F. 2005), and *Wheelus*, the CAAF has not indicated its jurisprudence regarding the appropriate standard for assessing post-trial processing error has changed.

### 3. Analysis

After considering the contents of the record of trial, and all attachments to the record of trial, including those granted by this court, we are convinced Appellant was provided the requisite five calendar days to respond to BH's matters, and did respond through counsel, prior to the convening authority's decision on action dated 19 August 2022.

To summarize the submission of matters chronologically, after Appellant's sentence was announced on 29 July 2022, Appellant was afforded ten days to submit clemency. He submitted clemency on 5 August 2022. BH submitted her matters to the convening authority on 8 August 2022. On 10 August 2022, the base legal office sent BH's matters to Appellant's trial defense counsel. The notice explained Appellant's right to respond and provided a suspense of five calendar days, which would be 15 August 2022. On 12 August 2022, on behalf of Appellant, trial defense counsel responded to BH's matters with a document entitled "Response to [BH's] Submission of Matters." This response addressed BH's statement disputing the alleged treatment of BH during her testimony and explained that "there were reasons" why Appellant did not offer an apology, but that the convening authority should not hold that against Appellant. On 15 August 2022, this submission was forwarded to the legal office for the convening authority. This legal office included Appellant's clemency request, BH's matters, and Appellant's rebuttal, by his trial defense counsel, to BH's matters. While the convening authority's decision on action was signed on 19 August 2022, in it he explains that he "considered matters timely submitted by [Appellant] under R.C.M. 1106, and by the Victim under R.C.M. 1106A." Although the convening authority did not explicitly state that he also considered Appellant's rebuttal to BH's matters, the declarations submitted post-trial make clear that it was provided to the convening authority before he signed his decision on action. The convening authority did not err when deciding action on Appellant's findings and sentence, and Appellant suffered no prejudice.

### C. *Emminizer*[10] Error

On 29 July 2022, Appellant was sentenced to confinement for 54 months and 100 days, forfeiture of all pay and allowances, reduction to the paygrade of E-1, and a dishonorable discharge. As explained *supra*, the convening authority took no action on the findings or the sentence. Pursuant to Appellant's request, the convening authority waived the automatic forfeitures for a period of six months, and directed the total pay and allowances be paid to Appellant's spouse for the benefit of her and their dependent child. However, because the

---

[10] *United States v. Emminizer*, 56 M.J. 441, 445 (C.A.A.F. 2002).

convening authority took no action on the sentence, he thereby approved the adjudged forfeiture of all pay and allowances. Since the adjudged forfeiture of all pay and allowances was approved, the automatic (mandatory) forfeitures were not triggered by the sentence and thus were not available to the convening authority to waive. *See United States v. Emminizer*, 56 M.J. 441, 445 (C.A.A.F. 2002) (holding that "when total forfeitures become effective under Article 57(a)[, UCMJ, 10 U.S.C. § 857(a),] as a result of a qualifying general court-martial sentence, . . . there are no mandatory forfeitures that can be waived").

We have examined the post-trial documents relevant to this issue, and we conclude the convening authority intended to provide Appellant's spouse with Appellant's full pay and allowances for the maximum amount of time allowed by law. Prior to waiving the total pay and allowances for a period of six months, the convening authority should have reduced, commuted, or suspended the adjudged forfeitures for the requisite timeframe, six months. Article 60a, UCMJ, 10 U.S.C. § 860a. In the interest of judicial economy, we have decided to correct the error through our appellate review authority. The adjudged forfeitures are hereby disapproved. *See United States v. Johnson*, 62 M.J. 31, 37−38 (C.A.A.F. 2005); *United States v. Arindain*, 65 M.J. 726, 731 (A.F. Ct. Crim. App. 2007) (disapproving adjudged forfeitures when the convening authority expressed intent to waive automatic forfeitures for the benefit of the dependents).

## II. CONCLUSION

The findings of guilty, as entered, are correct in law and fact. Article 66(d)(1), UCMJ (2024 *MCM*). Only so much of the sentence that includes a dishonorable discharge, confinement for 54 months and 100 days, and reduction to the grade of E-1, is approved. The sentence, as modified, is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. § 859(a), 866(d). Accordingly, the findings of guilty and the sentence, as modified, are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court